IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

CIVIL NO. 1:18-CV-00236-CSM

| | | |
|---|---|---|
| SOPHIA WILANSKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MORTON COUNTY, NORTH DAKOTA; | ) | **REPLY MEMORANDUM OF LAW IN** |
| "JOHN DOE" law enforcement officer in | ) | **SUPPORT OF COUNTY DEFENDANTS'** |
| his personal capacity; KYLE | ) | **MOTION TO DISMISS** |
| KIRCHMEIER; in his personal and official | ) | |
| capacities; PAUL LANEY, in his personal | ) | |
| capacity; and THOMAS IVERSON, in his | ) | |
| personal capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

***            ***            ***

As set forth in their principal memorandum and as set forth more fully below, County

Defendants request dismissal of the Complaint because Plaintiff has not alleged plausible claims.

Dismissal is appropriate because: (1) Plaintiff failed to plead a seizure occurred, a requirement of

a Fourth Amendment excessive force claim; (2) Plaintiff failed to allege facts that establish a use

of force that shocks the conscience, a requirement of a Fourteenth Amendment excessive force

claim; (3) Plaintiff's failure to allege a plausible claim for violation of her federal constitutional

rights by the individual Defendants also defeats Plaintiff's *Monell* claims against Morton County;

(4) Plaintiff's defamation claims against the County Defendants fail because their communications

were privileged, entitling them to absolute immunity; and (5) Plaintiff's request for injunctive

relief seeking to compel certain less-lethal training requirements on Morton County Sheriff's

1

Office likewise fails, because Plaintiff lacks standing and has not alleged any impending injury-in-fact.

I. **Matters Presented by County Defendants Are Appropriately Considered by the Court.**

County Defendants rely upon their arguments contained in their principal brief as to why information presented by County Defendants is properly considered by this Court in relation to County Defendant's motion to dismiss.  To the extent the Court determines any information is not properly before it in under Rule 12(b)(6), County Defendants request the Court simply disregard such information in making its ruling, and request County Defendants' motion <u>not</u> be converted to a motion for summary judgment.

II. **Plaintiff Fails To Allege She Was Seized As Required To Establish A Plausible Fourth Amendment Claim.**

Plaintiffs' assertion any physical touch by law enforcement constitutes a per se "seizure" under the Fourth Amendment is without merit, and mischaracterizes applicable law.  Although an arrest may be effected by either the slightest application of physical force with authority or a show of authority submitted to by the subject, both means of affecting a seizure under the Fourth Amendment require both the subjective intent by law enforcement to acquire physical control over the subject through termination of movement by means intentionally applied, as well as an objective manifestation of intent to detain.

As explained by the United States Supreme Court,

Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred. *Terry v. Ohio*, 392 U.S. [1,] 19, n. 16, 88 S.Ct. [1868,] 1879, n. 16.
\*\*\*
We adhere to the view that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. . . . As long as the person to whom questions are put remains free to disregard the questions and walk away,

2

there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.
\*\*\*
**We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.**

*United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (bold added).  The Supreme Court clarified the meaning of the above-bolded language ("Mendenhall Test") in *California v. Hodari D*., 499 U.S. 621 (1991), by explaining:

> [*Mendenhall*] says that a person has been seized "only if," not that he has been seized "whenever"; it states a *necessary*, but not a *sufficient*, condition for seizure – or, more precisely, for seizure effected through a "show of authority."  *Mendenhall* establishes that the test for existence of a "show of authority" is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officers' words and action would have conveyed that to a reasonable person.

*Hodari D*., 499 U.S. at 628 (italics in original).  Although the Mendenhall Test was established in a case involving a show of authority as opposed to the use of physical force, the objective manifestation of intent to obtain physical control requirement applies to both means of effecting a seizure.  As further explained by the United States Supreme Court:

>   We adhere to the rule that, in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' request **or otherwise terminate the encounter**.  That rule applies to encounters that take place on a city street or in an airport lobby, and it applies equally to encounters on a bus.

*Florida v. Bostick*, 501 U.S. 429, 439-40 (1991) (bold added).

> "[W]hen a person "has no desire to leave" for reasons unrelated to the police presence, the "coercive effect of the encounter can be measured better by asking whether "a reasonable person would feel free to decline the officers' request or otherwise terminate the encounter[]".

*Brendlin v. California*, 551 U.S. 249, 255 (2007), quoting *Florida v. Bostick*, 501 U.S. at 435-36.

Neither the United States Supreme Court nor the United States Court of Appeals for the Eighth

Circuit has ever held that an officer's use of force alone constitutes a per se seizure under the Fourth Amendment. Attempted but unsuccessful seizures are beyond the scope of the Fourth Amendment. *County of Sacramento v. Lewis*, 523 U.S. 833, 844-45 & n.7 (1998).

In addition to an objective manifestation of intent to detain, an officer must also subjectively intend to seize the specific target through the means intentionally applied. *See Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) ("[t]he sheriff only intended to remove Plaintiff from his path to the door; he did not intend to acquire physical control over her. Thus, no Fourth Amendment seizure occurred."; "[a] seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful"); *Collins v. Schmidt*, 326 F.Supp.3d 733, 740-41 (8th Cir. 2018) (determining innocent person bit by police dog had been seized under Fourth Amendment "because [K-9 officer] intended for [dog] to seize the first person he encountered, because [the dog] did seize the first person he encountered, and because [the innocent person] was that person, [the innocent person] was seized."); *Gardner v. Bd. Of Police Comm'rs*, 641 F.3d 947 (8th Cir. 2011) (determining officer suffering from hypoglycemic reaction who shot innocent bystander was entitled to qualified immunity from Fourth Amendment excessive force claim if he did not subjectively intend to effect a seizure); *Moore v. Indehar*, 514 F.3d 756, 760 (8th Cir. 2008) (noting officer must intend to seize a person through the means implemented to establish a Fourth Amendment claim; citing numerous cases finding injured bystanders not seized under Fourth Amendment as officers did not intend to seize them); *Gray v. Kern*, 702 Fed. Appx. 132 (4th Cir. 2017) (police trainee shot by training officer was not seized under Fourth Amendment despite his freedom of movement being terminated and the force applied being excessive as the training officer did not have an intent to seize the trainee, citing *Brower*); *Cooper v. Williams*, 2017 WL 8751746 *6 (M.D. Fla. Nov. 15, 2017) (innocent

bystander shot by officers during armed robbery was not seized under Fourth Amendment as officer did not intend to seize bystander, citing *Brower*); *Brooks v. Gaenzle*, 614 F.3d 1213, 1221 (10th Cir. 2010) (deputy did not seize plaintiff by shooting plaintiff as he fled as the shooting did not prevent plaintiff's freedom of movement or otherwise succeed in stopping him – seizure under Fourth Amendment requires some form of intentional acquisition of physical control through termination of movement by physical force or submission to show of authority; analyzing United States Supreme Court precedent, including among other cases, *Mendenhall* and *Hodari D.*); *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (there was no "seizure" under Fourth Amendment where plaintiff sustained injuries as a result of being shoved aside by sheriff during course of sheriff taking plaintiff's adult daughter into protective custody because a seizure under Fourth Amendment requires intentional acquisition of physical control).

Plaintiffs' reliance upon *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013), is misplaced. Although the *Atkinson* Court cited *Hodari D.* for the proposition "a seizure of a person is effected by the slightest application of physical force despite later escape," *id*. at 1208, the *Atkinson* Court did not state the intent of the officer to seize the object of the physical force was not also relevant. Both prior to *Atkinson* (in *Gardner* and *Moore*, *supra*), and subsequent to *Atkinson* (in *Collins, supra*), in analyzing whether a seizure has occurred for Fourth Amendment purposes, the United States Court of Appeals for the Eighth Circuit has looked to whether the officer subjectively intended to seize the person subjected to physical force. *Atkinson* also did not expressly or impliedly overrule *Gardner* or *Moore*. The Court in *Gardner* discussed at length the issue of objective versus subjective intent in light of *Brower* and *Brendlin*, and concluded that *Brendlin* (discussing objective intent) did not disavow *Brower* (discussing subjective intent), and noted that following *Brendlin*, the Court had applied a subjective intent requirement to an

5

excessive force claim under the Fourth Amendment in *Moore*. In addition, the Court's discussion of objective intent in Atkinson was in the context of whether physical force was intentionally applied, for which the Court concluded should be determined from the officer's objective behavior, not subjective intent. *Atkinson* at 1208-09 ("Whether physical force was 'intentionally applied' is determined by the officer's objective behavior, not his subjective intent."; "It is undisputed [the officer] intentionally applied physical force . . . ." (citation omitted)). Intent to apply force is a different issue from intent to seize.

As a practical matter, it would make no sense for any intentional touching by law enforcement to automatically constitute a seizure under the Fourth Amendment, without taking into account whether the officer intended to seize the target, and whether a reasonable person would objectively perceive such touching as a communication the person was not free to disengage from the officer. Query, does a seizure occur when an officer shakes the outstretched hand of another person in greeting? In such an instance, the officer intends to physically touch the other person, but no reasonable person could conclude such a touching was for the purpose of gaining physical control through termination of the person's movement. *See Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 n.4 (8th Cir. 2013) (noting officer's actions "objectively manifested" an intent to arrest the plaintiff by charging into plaintiff and temporarily incapacitating plaintiff and immediately thereafter ordering other officers to take plaintiff into custody).

Cases involving fatal shootings are distinguishable in that in such instances, it is beyond dispute a reasonable person would perceive being fatally shot was intended to gain physical control over them and to terminate their ability to disengage from law enforcement. Similarly, the cases cited by Plaintiff involving arrests or statements by officers evidencing an intent to detain are distinguishable. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008) (force applied to

6

effectuate arrest of protester at political demonstration); *Ciminillo v. Streicher*, 434 F.3d 461, 465-66 (6th Cir. 2006) (force applied with statements by officers objectively evidencing intent to detain, such as "stay down, stay down, stay down" and instructing suspect to report to another officer); *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123-24 (2nd Cir. 2004) (force applied to effectuate arrests of protesters at abortion clinic); *Headwaters Forest Defense v. County of Humboldt*, 276 F.3d 1125, 1130-31 (9th Cir. 2002) (force applied to effectuate arrests of environmental activists).   The Second Circuit case of *Edrei v. MaGuire*, 892 F.3d 525 (2[d.] Cir. 2018), cited by Plaintiff, evidences this distinction.   In *Edrei*, law enforcement utilized a long-range acoustic device (LRAD) to disperse protesters resulting in alleged permanent hearing loss by protesters, but offices made no effort to detain them.   In *Edrei*, no Fourth Amendment claim was involved, and instead, the protester's excessive force claims appropriately proceeded only under the Fourteenth Amendment.

In the present case, Plaintiff has not alleged, nor was she, arrested or detained on November 20-21, 2016.   Plaintiff does not allege she was advised by Law Enforcement she was not free to walk away from law enforcement, and instead admits she was warned to remove herself from the vicinity.   Plaintiff admits she proceeded south off the Bridge.   Plaintiff's pleading establishes she was at all times able to remove herself from the presence of law enforcement and from all force applied by simply voluntarily disengaging from law enforcement, and proceeding south across the Bridge from where she came-which she did.   In addition, Plaintiff's allegations, even if accepted as true, objectively manifest law enforcement's intention in applying the alleged force of keeping Plaintiff and other protesters away from law enforcement – the exact opposite of what is required for a seizure under the Fourth Amendment.   *See McCants v. City of Mobile, Georgia*, 752 Fed. Appx. 744 (11th Cir. 2018) (at motor vehicle accident scene, officer who yelled at and punched

mother of involved driver in the chest did not seize the mother under the Fourth Amendment as officer did not say or do anything to indicate mother was not free to leave the accident scene). In addition, Plaintiff has not alleged John Doe intended to acquire physical control of Plaintiff. Simply alleging John Doe fired at Plaintiff with resulting injury meets neither the subjective nor objective intent requirements to establish a plausible Fourth Amendment claim. As Plaintiff has failed to allege facts establishing she was seized by John Doe, County Defendants request Plaintiff's Fourth Amendment claim be dismissed.

III.   **Plaintiff's Fourteenth Amendment Claims Are Not Supported by Alleged Conduct that Shocks the Conscience, And Thus Fail.**

Plaintiff's assertion she may proceed with excessive force claims under both the Fourth and Fourteenth Amendments is incorrect. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. at 842 (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.)). Plaintiff's reliance upon *C.N. v. Willmar Public Schools, Ind. Sch. Dist. No. 347*, 591 F.3d 624 (8th Cir. 2009) for the proposition a plaintiff may proceed with claims under both the Fourth and Fourteenth Amendment is misplaced. The Court in *Willmar Public Schools* determined the plaintiff had no plausible claim under the Fourth Amendment, and then analyzed and dismissed the plaintiff's claim under the Fourteenth Amendment as well applying a shocks the conscience standard. *Id.* at 634. If this Court concludes Plaintiff has sufficiently alleged a deprivation of her constitutional rights in the context of a seizure, Plaintiff's claim must proceed under the Fourth Amendment only. On the other hand, if this Court concludes Plaintiff has not sufficiently alleged a seizure, her excessive force claim must proceed, if at all, only under the Fourteenth Amendment.

Plaintiff's assertion the "shocks the conscience" standard applicable to substantive due process claims of excessive force under the Fourteenth Amendment was abrogated by *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) is incorrect.  In *Kingsley*, a pretrial detainee alleged county jail officers used excessive force against him in violation of the Fourteenth Amendment.  *Kingsley* neither expressly nor impliedly overruled *Lewis*, the seminal United States Supreme Court case concerning the "shocks the conscience" standard for substantive due process claims of excessive force under the Fourteenth Amendment.   Instead, the narrow issue addressed in *Kingsley* was "whether, to prove an excessive force claim [under the Fourteenth Amendment's Due Process Clause], a pretrial detainee must show that the officers were *subjectively* aware that their use of force was unreasonable, or only that the officers' use of that force was *objectively* unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. at 2470.  The Court concluded there are two separate state-of-mind inquiries involved in that context.

> The first concerns the defendant's state of mind with respect to his physical acts – i.e., his state of mind with respect to the bringing about of certain physical consequences in the world.  The second question concerns the defendant's state of mind with respect to whether his use of force was "excessive."

The Court in *Kingsley* concluded that as to the second question, the relevant standard is objective not subjective.  In other words, in determining whether the force deliberately (i.e. not accidentally or negligently) applied by the defendant is, constitutionally speaking, "excessive", courts should use an objective standard in the context of claims by pre-trial detainees.  As the district court in *Kingsley* had given a jury instruction which implied the subjective state of mind of the officer was relevant to the question of whether the force applied to the pretrial detainee was "excessive", the Supreme Court concluded such instruction was in error and vacated and remanded the case for proceedings consistent with its decision.

*Kingsley* did not address the "shocks the conscience" standard.  Application of an objective standard in determining whether force applied is excessive does not negate the requirement that the conduct at issue "shock the conscience" of the court to establish a plausible substantive due process claim under the Fourteenth Amendment.  Circuit courts continue to apply the shock the conscience standard following *Kingsley*, including the Eighth Circuit.  *See Awnings v. Fullerton*, 912 F.3d 1089 (8th Cir. 2019) (affirming a Rule 12(b)(6) dismissal of an arrestee's claim of denial of medical care, noting "The standard for evaluating a substantive due process claim is whether the alleged behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."); *Mendoza v. United States Immigration and Customs Enforcement*, 849 F.3d 408, 420-21 (8th Cir. 2017) (applying "shocks the conscience" standard in upholding dismissal of substantive due process claim of illegal detention under Fourteenth Amendment); *Truong v. Hassan*, 829 F.3d 627, 631 (8th Cir. 2016) (applying a "shocks the conscience" standard to substantive due process claim under Fourteenth Amendment in context of passenger being thrown off bus for failing to pay fee); *Buck v. City of Highland Park, Michigan*, 733 Fed. Appx. 248, 253-54 (6th Cir. 2018) (applying conscience-shocking standard to substantive due process excessive force claim under Fourteenth Amendment brought by innocent bystander shot by police officer in affirming Rule 12(c) dismissal of claim); *McCants v. City of Mobile, Georgia*, 752 Fed. Appx. 744 (11th Cir. 2018) (affirming Rule 12(b)(6) dismissal of substantive due process excessive force claim by motorist allegedly verbally abused by officer and her mother punched in the chest by officer during traffic stop; "In a non-custodial situation, like the present one, only a purpose to cause harm unrelated to the legitimate object of law enforcement satisfies the element of arbitrary conduct shocking to the conscience that is necessary for a due process violation." (citing *County of Sacramento v. Lewis*, 523 U.S. at 836)); *Gray v. Kern*, 702 Fed. Appx.

at 139-41 (applying conscience-shocking standard to substantive due process excessive force claim under Fourteenth Amendment brought by police trainee who was shot by training officer); *Reed v. Clough*, 694 Fed. Appx. 716 (11th Cir. 2017) (officer's actions of shooting at arrestee's vehicle did not shock the conscience, warranting summary judgment dismissal of substantive due process excessive force claim under the Fourteenth Amendment.)

In addition, *Kingsley*, and all of the Eighth Circuit cases cited by Plaintiff involved claims by or on behalf of pretrial detainees.  *See Kingsley v. Hendrickson*, 135 S. Ct. at 2470 (involving alleged mistreatment of pretrial detainee); *Ryan v. Armstrong*, 850 F.3d 419, 423 (8th Cir. 2017) (involving claim of deliberate indifference to medical needs by trustee of pretrial detainee's estate against jail officers – applying Eighth Amendment deliberate indifference standard to Fourteenth Amendment substantive due process claim); *Barton v. Taber*, 820 F.3d 958, 962 (8th Cir. 2016) (involving claim by personal representative of estate of pretrial detainee alleging denial of medical care; applying Eighth Amendment deliberate indifference standard); *Davis v. White*, 795 F.3d 1008, 1011 (8th Cir. 2015) (involving alleged mistreatment of pretrial detainee).  The Plaintiff in the present case was not a pre-trial detainee.  "But *Kingsley* addressed only the legally requisite state of mind required for a <u>pretrial detainee's</u> excessive force claims under the Due Process Clause of the Fourteenth Amendment."  *Dancy v. McGinley*, 843 F.3d 93, 117 (2d. Cir. 2016) (underline added) ("Notably, unlike § 1983 claims under the Due Process Clause or Eighth Amendment, Fourth Amendment claims are tied to reasonableness, which is considerably less demanding." (citing *Lewis*, 523 U.S. at 848-49)).  Plaintiff has not cited a single Eighth Circuit case involving a substantive due process excessive force claim under the Fourteenth Amendment outside the context of a pretrial detainee.  The cited pretrial detainee cases are inapposite, and *Lewis* remains applicable law governing substantive due process excessive force claims under

the Fourteenth Amendment not involving pre-trial detainees.

Further, Plaintiff's allegations against John Doe essentially allege negligent conduct. "[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Lewis*, at 848-49.  *See Kingsley*, 135 S. Ct. at 2472 ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process" (quoting *Lewis*)).

> [s]ubstantive due process is concerned with violations of personal rights . . . so severe . . . so disproportionate to the need presented, **and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience**.

*C.N. v. Willmar Public Sch., Ind. School Dist. No. 347*, 591 F.3d at 634 (citing *Golden v. Anders*, 324 F.3d 650, 652-53 (8th Cir. 2003) (bold added); *Hall v. Ramsey County*, 801 F.3d 912, 918 (8th Cir. 2015) (determining resisting plaintiff's injuries caused by county detox center's aides who transported plaintiff to seclusion were caused by unwise excess of zeal by aides which, although unacceptable, did not shock the conscience to establish a claim under the Fourteenth Amendment; instead, state-law claims may provide a more appropriate remedy for the harm caused).

Ultimately, while County Defendants deny utilizing a light/sound diversionary device (i.e. flashbang), or any explosive device against Plaintiff which could have caused Plaintiff's injuries, Plaintiff fails to plead facts sufficient to establish a plausible excessive force claim under the Fourteenth Amendment.  Notably, Plaintiff has not alleged Defendant Doe intended to fire or launch an exploding munition directly at Plaintiff, or intended to harm Plaintiff in relation to her federal constitutional claims, and Plaintiff's allegations establish the exact opposite.  The allegation in paragraph 114 that after the explosive munition was allegedly fired at Plaintiff by Defendant Doe the other officers congratulated Defendant Doe on his marksmanship does not constitute an allegation of intentional conduct, malice or sadism.  Merely asserting an officer shot

at her does not allege an intention to strike or injure her.  The alleged reactions of nearby officers does not establish the intent of Defendant Doe.  Absent an allegation that Defendant Doe intended to cause harm to Plaintiff, unjustified by the circumstances presented, and inspired by malice or sadism which amounted to a brutal and inhumane abuse of official power literally shocking the conscience, Plaintiff fails to allege a plausible claim of violation of her substantive due process rights under Eighth Circuit law.  "Because the conscience-shocking standard is intended to limit substantive due process liability, it is an issue of law for the judge, not a question of fact for the jury." *Truong v. Hassan*, 829 F.3d at 631 (citations omitted)).  County Defendants request Plaintiff's excessive force claim under the Fourteenth Amendment be dismissed.

**IV.      Qualified Immunity Bars Plaintiff's Federal Excessive Force Claims.**

Individual County Defendants are entitled to qualified immunity as 1) Plaintiff has failed to allege a plausible violation of her constitutional rights, and 2) even assuming, arguendo, Plaintiff has plead a plausible claim, there was no clearly established, existing precedent establishing the use of less-lethal munitions from a strictly defensive position constitutes a seizure within the meaning of the Fourth Amendment, and 3) there is no clearly established, existing precedent establishing the use of less-lethal munitions without a malicious or sadistic intent to cause harm under similar circumstances to those alleged in this case violates substantive due process under the Fourteenth Amendment.  Dismissal of Plaintiff's claims against individual County Defendants on this basis is appropriate.

**V.      Plaintiff Admits The *Monell* Claims Rise or Fall on the Excessive Force Claims.**

In Plaintiff's Response, she admits that her *Monell* claim against Defendant Morton County necessarily fails if her underlying excessive force claims against Officer Doe fail.  (Response at 22.)  As explained above, Plaintiff's excessive force claims lack any allegation of a seizure or

conduct that shocks the conscience, and thus fail as a matter of law.  Therefore, Plaintiff's *Monell* claim against Defendant Morton County must also fail.

**VI.     Privileged Statements Are Per Se Non-Defamatory, and Plaintiff Fails to Provide Any Authority That States Otherwise.**

County Defendants incorporate by reference Defendant Thomas Iverson's discussion of applicable law on defamation and absolute immunity as contained in his principal brief (doc. 27) and reply brief (doc. 38).  A communication is absolutely privileged if made in the proper discharge of an official duty, and such absolute privilege is not lost even if made with actual malice. *Richmond v. Nodland*, 552 N.W.2d 586, 588 (N.D. 1996) (citing N.D.C.C. § 14-02-5).

As discussed in County Defendants' principal brief, Sheriff Kirchmeier was at all times relevant the Sheriff of Morton County where the incidents at issue occurred, the designated chair of the Uniform Incident Command Policy Group, and the overall Incident Commander responding to the DAPL protests.  Sheriff Laney was the Sheriff of Cass County, a member of the Uniform Incident Command Policy Group, and served as Operations Commander in Morton County during the DAPL protests.  It was part and parcel of the official duties of Sheriffs Kirchmeier and Laney to disseminate information about the DAPL protests to the public through the media.  The free flow and exchange of information – including information transmitted by Sheriffs Kirchmeier and Laney – concerning the largest-scale and most chaotic protests in the State's history by any measure, was part of their official duties.  County Defendants request Plaintiff's defamation claim be dismissed.

**VII.    Standing Requires Much More Than Some Future, Vague, And Entirely Hypothetical Threat.**

To obtain standing to request injunctive relief, Plaintiff must establish a threat of future injury that is "both real and immediate, not conjectural or hypothetical." *City of Los Angeles v.*

*Lyons*, 461 U.S. 95, 101-02 (1983). To establish the required threat, Plaintiff argues she is a "committed social justice advocate who regularly protests pipelines" and that she "has protested DAPL in Morton County in the past, but is afraid to do so in the future". (Response at pp. 28-29.)

Plaintiff, a resident of New York, has not alleged she actually plans to return to Morton County ever again. The alleged threat of harm to Plaintiff is neither real nor immediate, but rather involves some future hypothetical threat or harm. Plaintiff incorrectly relies upon her past experience in Morton County in support of her claim for injunctive relief. *See United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002) ("[T]he irreparable injury inquiry must concentrate on current threats, not past ones . . .").

In addition, Plaintiff's allegation John Doe, or any other law enforcement officers in Morton County who utilize less-lethal munitions for that matter, are not adequately trained merely constitutes a legal conclusion. As a practical matter, if Plaintiff is unable to identify a specific officer who allegedly utilized a less-lethal device against her, how can Plaintiff make a factual allegation that John Doe lacked proper training in the use of less-lethal. Plaintiff's legal conclusion is based on pure speculation. County Defendants request Plaintiff's request for injunctive relief be dismissed.

## VIII.   CONCLUSION

For the reasons discussed above and in their principal memorandum, County Defendants respectfully request the Court dismiss Plaintiff's Complaint against them.

Dated this 21st day of March, 2019.

BAKKE GRINOLDS WIEDERHOLT


By:   */s/ Shawn A. Grinolds*
        Randall J. Bakke (#03898)
        Shawn A. Grinolds (#05407)

15

Bradley N. Wiederholt (#06354)
Special Assistant State's Attorneys for
Morton County
300 West Century Avenue
P.O. Box 4247
Bismarck, ND 58502-4247
(701) 751-8188
rbakke@bgwattorneys.com
sgrinolds@bgwattorneys.com
bwiederholt@bgwattorneys.com

Attorneys for Defendants Morton County,
Kyle Kirchmeier, and Paul Laney

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2019, a true and correct copy of the foregoing **REPLY MEMORANDUM OF LAW IN SUPPORT OF COUNTY DEFENDANTS' MOTION TO DISMISS** was filed electronically with the Clerk of Court through ECF.

ATTORNEYS FOR PLAINTIFF:

Edward C. Barnidge
Benjamin M. Stoll
WILLIAMS & CONNOLLY LLP
725 Twelfth Street Northwest
Washington, DC 20005
ebarnidge@wc.com
bstoll@wc.com

ATTORNEYS FOR DEFENDANT THOMAS IVERSON:

Matthew A. Sagsveen
Solicitor General
James E. Nicolai
Deputy Solicitor General
Office of Attorney General
500 North 9th Street
Bismarck, ND 58501-4509
masagsve@nd.gov
jnicolai@nd.gov

By:___*/s/ Shawn A. Grinolds*_____
        SHAWN A. GRINOLDS