## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Sophia Wilansky, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18-cv-236 |
| | ) | |
| vs. | ) | **ORDER REGARDING PLAINTIFF'S** |
| | ) | **MOTION TO COMPEL** |
| Morton County, North Dakota, et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Sophia Wilansky was injured in the early morning hours of November 21, 2016, and alleges her injury resulted from defendants' use of excessive force. Defendants moved to dismiss Wilansky's complaint, and the presiding judge dismissed some of Wilansky's claims. (Doc. 46). As to the claims not dismissed, the presiding judge converted the motion to dismiss to a motion for summary judgment and allowed the parties to conduct limited discovery addressing three distinct questions.

Wilansky challenged the adequacy of Morton County's responses to her interrogatories and requests for production of documents. The parties endeavored to resolve the dispute without the court's intervention but were unable to do so. The parties then participated in an informal dispute resolution conference pursuant to Civil Local Rule 37.1. At that conference, the parties reached agreement as to some issues and the court authorized Wilansky to file a discovery motion addressing a single issue not resolved during the conference—the extent to which defendants must collect documents from other law enforcement agencies whose personnel were present when Wilansky was injured. This order addresses only the single issue on which formal briefing was authorized.

**Background**

The facts on which Wilansky bases her claims are detailed in the order addressing the motions to dismiss and so are described only briefly here. On November 20 and 21, 2016, Wilansky was engaged in a protest against construction of the Dakota Access Pipeline (DAPL) near the Backwater Bridge in Morton County, North Dakota. She alleges a law enforcement officer—identified as John Doe—intentionally fired a grenade-like explosive he knew to be dangerous directly at her, while she was unarmed, engaging in peaceful protest, and actively complying with law enforcement orders to retreat from a police barricade. She alleges the officer's action resulted in most of her left forearm being blown off. (Doc. 35, p. 7). It is defendants' position that Wilansky's "alleged injuries were caused by an improvised explosive device—a device not originating from law enforcement." (Doc. 60-2, p. 12).

In converting the motion to dismiss to one for summary judgment, the presiding judge identified three factual disputes about which the parties are allowed to conduct limited discovery: "(1) whether Defendant Officer Doe used an explosive less-lethal munition at the time and place of Wilansky's injury; (2) if Defendant Officer Doe was acting in a defensive position when he or she used such munition if he or she did; and (3) whether protestors were handling improvised explosive devices at the time and location of Wilansky's injuries." (Doc. 51, p. 2). Discovery is limited to each side (1) conducting two depositions of individuals or entities, (2) serving two subpoenas either for third-party depositions or for records and documents, and (3) serving two individuals each with up to twelve interrogatories and twelve requests for production of documents. Additionally, the parties are allowed to request law enforcement agencies having custody of shrapnel recovered from Wilansky's arm and the clothing she was

2

wearing at the time of her injury to allow the parties access to those items for purposes of testing and examination. Id. at 6.

Protest activity against DAPL spanned many months and at times was estimated to involve several thousand protesters. A number of other law enforcement agencies—state, federal, and local—worked with the Morton County Sheriff's Office in responding to the protest activity. The current dispute centers on Morton County's responsibility to secure documents from other law enforcement agencies whose personnel were present when Wilansky was injured.

## Law and Discussion

Under Federal Rule of Civil Procedure 34(a)(1), a party may serve on any other party a request to produce relevant documents within "the responding party's possession, custody, or control." Wilansky alleges law enforcement officers from other agencies were acting as agents of Morton County and asserts documents and evidence held by other law enforcement agencies are therefore within Morton County's control. (Doc. 60, p. 4).

In support of her position, Wilansky cites a number of decisions of district courts within the Eighth Circuit. (Doc. 60, p. 3). Though not factually similar to this case, the decisions she cites hold that Rule 34(a) requires a party responding to a request for production of documents to obtain relevant documents from a non-party if the responding party has the "practical ability to obtain the documents from another, irrespective of any legal entitlement to the documents." Union Pac. R.R. Co. v. Mike's Train House, Inc., No. 8:05CV575, 2006 WL 8458361, at *4 (D. Neb. Aug 10, 2006).

A products liability case from the District of Minnesota is frequently cited by other courts in this circuit when considering the scope of "control" under Rule 34. In

response to discovery requests, American Lighting Industry, Inc., a defendant who distributed the lamp at issue offered the affidavit of Mr. Huy Ly, which averred that American was not a manufacturer of lamps and that, in fact, it purchased lamps from two distributors, Semilla Industrial Co. and Kingdom Lighting Industry Co. However, the plaintiffs claimed that they had discovered a patent pending on safety features for lamps that was attributable to an American consultant, Mr. John Yey. In addition, during a deposition, Bernard Koay, the President of American, admitted that American purchased lamps from a third manufacturer known as Bright Lamps. Despite those revelations, American had not produced requested documents regarding Semilla Industrial Co., Kingdom Lighting Industry Co., or Bright Lamps and had not produced the documents indicating its involvement in lamp design. Moreover, American had not responded to the plaintiffs' discovery requests which sought information concerning American's corporate structure. Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 635-36 (D. Minn. 2000).

Relying on a number of cases decided in districts outside this circuit, Prokosch interpreted "control" under Rule 34 to encompass the practical ability to obtain the documents from a non-party:

> Yey's pending patent, regarding safety features for lamps, is not attributable to American, absent a showing that Yey is more than merely a consultant to American. On the other hand, to the extent that American, or its agents, have "care, custody, or control" over patent-related documents, that are responsive to the Plaintiffs' requests, they are directed to produce them. This direction encompasses documents that American may not physically possess, but which it is capable of obtaining upon demand. Also, to the extent that American is in the "care, custody, or control" of documents involving transactions with Semilla Industrial Co., Kingdom Lighting Industry Co., or Bright Lamps, or documents evidencing its corporate structure, it is directed to produce that information as well.

Id. at 636 (emphasis added).

4

Other district courts within this circuit have similarly interpreted "control" under Rule 34 to include the practical ability to obtain requested documents from a non-party, regardless of the responding party's legal entitlement to the documents. In <u>Handi-Craft Co. v. Action Trading, S.A.</u>, the court discussed factors considered in determining a responding party's control over requested documents:

> The term "control" has been broadly construed and may obligate a party to produce documents not in the party's possession where the party has the legal right <u>or practical ability</u> to obtain them from another source on demand. "[I]n spirit with the current policy of permissive discovery, a party is generally considered to have 'control' over documents under Rule 34(a) if it can likely obtain such documents on demand." Factors to be examined in analyzing whether a sufficient degree of control exists are: (1) commonality of ownership, (2) exchange or intermingling of directors, officers, or employees of the two corporations, (3) exchange of documents between the corporations in the ordinary course of business, (4) benefit or involvement by the non-party corporation in the transaction, and (5) involvement of the non-party corporation in the litigation. This analysis applies to parent and subsidiary corporations, sister corporations, and other similarly related corporations.

No. 4:01 CV 1731 LMB, 2003 WL 26098543, at *5 (E.D. Mo. Nov. 25, 2003) (emphasis added and citations omitted) (quoting <u>Flavel v. Svedala Indus., Inc.</u>, No. 92-C-1095, 1993 WL 580831, at *4 (E.D. Wisc. Dec. 13, 1993)).

<u>Dean McNeel. D.D.S., P.A. for McNeel v. KaVo Dental Technologies, LLC</u>, involved a claim of defective dental equipment. Defendant KaVo refused to produce documents in the possession and control of a related foreign entity, and the plaintiff had not requested the documents directly from the foreign entity. The court concluded KaVo had the practical ability to obtain information from the related foreign entity and ordered KaVo to attempt to do so. Civil No. 10-5043, 2010 WL 11565351, at *2 (W.D. Ark. Nov. 8, 2010).

5

In an Arkansas patent dispute, the defendant argued the plaintiff was required to obtain documents from third parties with whom it had contracted in asset purchase agreements. Finding a "colorable argument with respect to some of the third parties based on the purchase agreements" but no relationship whatsoever as to other third parties, the court concluded the plaintiff did not have the practical ability to obtain the requested documents from the third parties. Additionally, the court noted the requested documents were available to the defendant through subpoena under Federal Rule of Civil Procedure 45. St. Jude Med., Inc. v. Access Closure, Inc., No. 09-cv-4101, 2010 WL 11484398, at *1-2 (W.D. Ark. Oct. 12, 2010).

In another case, after the Office of Thrift Supervision (OTS) closed a bank and appointed the Federal Deposit Insurance Corporation as receiver, the FDIC brought negligence and breach of fiduciary duty claims against the bank's former officers and directors. The defendants requested the FDIC to produce internal OTS documents, and the FDIC argued it was not responsible to produce any OTS documents other than those in its own possession. The court ordered the FDIC to produce responsive documents, whether in its possession or the possession of OTS or the Office of the Comptroller of the Currency. The court stated that if the FDIC "ultimately takes the position that it has tried to obtain responsive OTS documents from OCC and has been unable to do so, it should be prepared to exhaustively document the steps it took to comply with this order." Fed. Deposit Ins. Corp. v. Dosland, No. C13-4046-MWB, 2014 WL 1347118, at *5-6 (N.D. Iowa April 4, 2014).

In Comas v. Schaefer, the plaintiffs sought information about mental health professionals who had treated them and sign language interpreters who had interpreted for them, including information from third parties who were "administrative agents" of

the defendants. Citing to <u>Prokosch</u> and contracts between the defendants and the third parties, the court ordered the defendants to produce the requested information. No. 10-04085-CV-C-FJG, 2010 WL 2927280, at *2 (W.D. Mo. July 21, 2010). <u>See also</u> <u>McElgunn v. CUNA Mutual Group</u>, Civ. No. 06-5061-KES, 2008 WL 2717872, at *2 (D.S.D. July 10, 2008).

Defendants have cited no cases questioning the premise that the scope of control within the meaning of Rule 34 includes the practical ability to obtain the documents from a non-party. Rather, defendants' opposition to the motion focuses on the relationship between Morton County and the other law enforcement agencies who responded to the DAPL protests.

1. **Relationship Between Morton County and Other Law Enforcement Agencies**

Wilansky asserts officers from other agencies were acting in concert with Morton County when she was injured and were acting as agents of Morton County. She contends defendant Kyle Kirchmeier—Morton County Sheriff—"was the incident commander and sat at the very top of the formal Unified Command Organization Chart applicable to the November 20 protest." (Doc. 60, p. 4). The organizational chart to which Wilansky cites identifies Sheriff Kirchmeier as one of four persons in charge of the Unified Command. (Doc. 60-3).[1] As additional facts supporting Morton County's alleged control, Wilansky submitted evidence of (1) officers from other law enforcement agencies having been sworn as special deputies of the Morton County Sheriff's Office for purposes of

---

[1] Along with Kirchmeier, the organizational chart identifies the director of the North Dakota Department of Emergency Services, the commander of the North Dakota Highway Patrol, and the Mercer County Sheriff as the "Unified Command." The chart does not indicate any hierarchy of authority among the four officials.

responding to the DAPL protests, (2) officers from other agencies describing themselves as "assisting Morton County" or "working special detail for the Morton County Sheriff's Department," (3) mutual aid agreements between Morton County and other law enforcement agencies or governmental units, and (4) deputies from other counties being cross-deputized by Sheriff Kirchmeier. (Doc. 60, pp. 4-5).

Morton County supports its opposition to the motion to compel with Sheriff Kirchmeier's affidavit. His affidavit states the United Command Organizational Chart was prepared by the North Dakota Department of Emergency Services rather than by Morton County. Sheriff Kirchmeier states he and the other three officials who comprised the Unified Command made joint decisions regarding overall objectives, after consulting among themselves and with others. He states, "Plans to achieve those objectives were generally prepared by others, dependent upon the objective at issue. Usually, others would then implement those plans." (Doc. 64, p. 2). Further, Sheriff Kirchmeier states the argument that he "had the ultimate authority or control in relation to law enforcements' coordinated response to the DAPL protests is simply incorrect." Id. at 2-3. Sheriff Kirchmeier also states, "Although various political subdivisions and the State voluntarily provided Morton County with information pertaining to their involvement in relation to the November 20-21, 2016 riot at the Backwater Bridge, neither I nor Morton County has the right or authority to demand any additional information from them." Id. at 3. Additionally, Sheriff Kirchmeier states members of SWAT teams and state employees had law enforcement jurisdiction in Morton County without the need for cross-deputization. He states appointment as special deputy was done to facilitate assistance with scheduled work in the county. And, he states any officers responding to a

state-wide call for all available law enforcement assistance on November 20, 2016, automatically had powers as peace officers in the county under state law.

Finally, the affidavit explains Sheriff Kirchmeier's belief that a state statute governing mutual aid agreements between governmental entities "simply speaks to how those officers will be categorized for purposes of North Dakota's governmental tort and immunity laws" and does not give Morton County any right to compel production of information by a governmental entity providing assistance pursuant to a mutual aid agreement. Id. at 5.

Sheriff Kirchmeier's affidavit contradicts Wilansky's assertion of Morton County's legal entitlement to obtain the requested documents from the other law enforcement agencies whose personnel were present at the time Wilansky was injured. The court will not order compliance with Wilansky's requests for production on the basis of Morton County's legal entitlement to obtain the requested documents. But, as discussed above, legal entitlement is not required to have "control" within the meaning of Rule 34. Practical ability to obtain the requested documents is sufficient.

**2.     Practical Ability to Obtain Documents and Evidence from Other Law Enforcement Agencies**

The evidence submitted by Wilansky, as well as that submitted by Morton County, shows a close working relationship between the Morton County Sheriff's Office and the other law enforcement agencies that responded to the DAPL protests. Cooperation between the agencies was essential in light of the circumstances surrounding the DAPL protests. And Sheriff Kirchmeier's affidavit speaks of other agencies having voluntarily provided documents to Morton County. (Doc. 64, p. 3). There is no evidence that Morton County has requested additional documents from

9

other agencies or that other agencies have been unwilling to provide additional documents to Morton County. Any of the other agencies whose personnel were present when Wilansky was injured would have an obligation to respond to a document subpoena.

Given the evident degree of cooperation between Morton County and the other agencies and governmental units who were part of the response to the DAPL protests, the court views Morton County as likely having the practical ability to obtain documents from other agencies on request. The court will order Morton County to make those requests, as detailed below.

In reaching its conclusion, the court considers the unique circumstances of this case, including the limited discovery currently allowed and the presiding judge's intent that Wilansky be able to secure evidence of those present when she was injured through the written discovery process. In the order allowing limited discovery, the presiding judge stated, "It is clear Morton County and/or Sheriff Kirchmeier may hold the answer to which officers were present and which used munitions, including the officer who allegedly injured [Wilansky]." (Doc. 51, p. 3). Further, the presiding judge designed written discovery as the first step in the process to allow Wilansky to identify witnesses who she might need to depose.

The court therefore orders Morton County to request the following documents and evidence from every law enforcement agency or governmental entity whose personnel were present in the area of the Backwater Bridge between 12:01 a.m. and 6:00 a.m. on November 21, 2016:

(1)   Videos;

(2)     Internal documents and communications discussing severe protester injuries and/or explosive less-lethal munitions;

(3)     Situation reports, witness statements and notes, threat assessments, and investigation reports relating to Wilansky's injury; and

(4)     Physical evidence collected from the Backwater Bridge.

Counsel for Morton County must make the requests for responsive documents within three days of today's date and must simultaneously send copies of the requests to Wilansky's counsel. A copy of this order must be included with the requests. The agencies must be asked to respond to the requests within ten days of receipt. Counsel for Morton County must provide copies of any documents received to Wilansky's counsel within three days of counsel for Morton County receiving the documents. In the event Morton County asserts privilege as to any documents it receives, it must provide a privilege log simultaneously with its production of documents to Wilansky's counsel.

In the Rule 37.1 conferences, and in her brief, Wilansky asserts a need to alter the discovery timeline ordered by the presiding judge. The court will address that question during the Rule 37.1 conference scheduled for February 5, 2021.

Wilansky's motion to compel, (Doc. 60), is **GRANTED** to the extent described above.

**IT IS SO ORDERED**.

Dated this 1st day of February, 2021.

*/s/ Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge