# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
## WESTERN DISTRICT

SOPHIA WILANSKY,

                Plaintiff,

v.

MORTON COUNTY, *et al.*,

                Defendants.

Case No.  1:18-cv-00236

Honorable Judge Traynor
Honorable Judge Senechal

---

## PLAINTIFF'S CONSOLIDATED OPPOSITION
## TO DEFENDANTS' MOTIONS TO DISMISS
## THE SECOND AMENDED COMPLAINT

---

Benjamin M. Stoll
CARLTON FIELDS P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
(202) 965-8160
bstoll@carltonfields.com

Edward C. Barnidge
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000
ebarnidge@wc.com

Lauren C. Regan
CIVIL LIBERTIES DEFENSE CENTER
1430 Willamette Street #359
Eugene, Oregon 97401
(541) 687-9180
lregan@cldc.org

*Attorneys for Plaintiff*

# <u>TABLE OF CONTENTS</u>

*Page*

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

FACTS ................................................................................................................................ 1

    A.    Key Facts Relevant to Motions to Dismiss. ........................................................ 2

    B.    The Additional Facts Proposed by Defendants Are Irrelevant. ............................ 5

ARGUMENT ...................................................................................................................... 7

I.      LEGAL STANDARDS. ............................................................................................. 7

II.     PLAINTIFF WAS SEIZED BY DEFENDANTS MOLL AND DVORAK. ................... 8

    A.    Plaintiff Was Physically Restrained, so *Torres* Does Not Apply. .......................... 8

          1.    Defendant Moll Terminated Sophia's Freedom of Movement. ................ 10

          2.    Defendant Dvorak Terminated Sophia's Freedom of Movement ............ 10

    B.    Plaintiff Satisfies the *Torres* Test for Seizure by Force. ...................................... 11

          1.    Defendant Moll Intended to Restrain/Injure Sophia. .............................. 12

          2.    Defendant Dvorak Intended to Restrain/Injure Sophia. .......................... 14

    C.    In Light of This Seizure Dispute, the Court Should Allow Plaintiff to Plead Her Fourteenth Amendment Claim in the Alternative. ........................................ 16

III.    DEFENDANT MOLL AND DEFENDANT DVORAK DEPLOYED EXCESSIVE FORCE AGAINST SOPHIA. ................................................................... 17

    A.    Defendant Moll Used Excessive Force Against Sophia. ..................................... 18

    B.    Defendant Dvorak Used Excessive Force Against Sophia. ................................. 19

IV.    DEFENDANTS MOLL AND DVORAK ARE NOT ENTITLED TO QUALIFIED IMMUNITY................................................................................................. 21

# TABLE OF CONTENTS
(continued)

*Page*

A.    It Was Clearly Established in November 2016 that Defendants' Use of Explosive Munitions Was a Seizure. ....................................................................22

B.    It Was Clearly Established in November 2016 that Defendants' Use of Explosive Munitions Was Excessive and Violated the Fourth Amendment........23

C.    Qualified Immunity Has No Basis in the Constitution or the Law and Should be Categorically Rejected....................................................................................26

V.    IN LIGHT OF *MITCHELL*, PLAINTIFF HAS ADEQUATELY PLEADED HER OTHER EXCESSIVE FORCE CLAIMS........................................................................28

A.    The Fourteenth Amendment Claim Is Plausible and Adequately Pled................29

B.    Plaintiff's *Monell* Claim Is Plausible and Adequately Pled. ...............................30

VI.    PLAINTIFF'S STATE-LAW CLAIMS AGAINST NON-STATE DEFENDANTS ARE ADEQUATELY PLEADED......................................................................................31

CONCLUSION....................................................................................................................34

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Atkinson v. City of Mountain View, Missouri*,
    709 F.3d 1201 (8th Cir. 2013).................................................................................8, 12

*Baxter v. Bracey*,
    140 S. Ct. 1862 (2020)........................................................................................26, 27

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................7

*Bernini v. City of St. Paul*,
    655 F.3d 997 (8th Cir. 2012).....................................................................................25

*Black Lives Matter D.C. v. Trump*,
    544 F. Supp. 3d 15 (D.C. 2021) .................................................................................9

*Boyd v. Benton County*,
    374 F.3d 773 (9th Cir. 2004).....................................................................................24

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009)......................................................................................7

*Brower v. County of Inyo*,
    489 U.S. 593 (1989) .................................................................................................23

*Brown v. City of Golden Valley*,
    574 F.3d 491 (8th Cir. 2009).....................................................................................24

*Burke v. Sullivan*,
    677 F.3d 361 (8th Cir. 2012).....................................................................................24

*California v. Hodari D.*
    499 U.S. 621 (1991) .................................................................................................23

*Chambers v. Pennycock*,
    641 F.3d 898 (8th Cir. 2011)...............................................................................20, 21

*Ciminillo v. Streicher*,
    434 F.3d 461 (6th Cir. 2006).....................................................................................12

*Dakota Access, LLC v. Archambault*,
    No. 1:16-cv-296, 2016 WL 5107005 (D.N.D. Sept. 6, 2016)............................................5

**TABLE OF AUTHORITIES**
(continued)

*Page*

*Deorle v. Rutherford*,
    272 F.3d 1272 (9th Cir. 2011).........................................................................25

*Dixon v. Lowery*,
    302 F.3d 857 (8th Cir. 2002)..........................................................................22

*Dobbs v. Jackson Women's Health Organization*,
    142 S. Ct. 2228 (2022).............................................................................27, 28

*Dundon v. Kirchmeier*,
    577 F. Supp. 3d 1007 (D.N.D. 2021) ........................................................6, 9, 26

*Edwards v. Byrd*,
    750 F.3d 728 (8th Cir. 2014)..........................................................................24

*Ellis v. Devig*,
    No. CIV 3:08-CV-19, 2009 WL 1886644 (D.N.D. June 26, 2009)................................33

*Estate of Escobedo v. Bender*,
    600 F.3d 770 (7th Cir. 2010)..........................................................................24

*Ferguson v. Short*,
    840 F.3d 508 (8th Cir. 2016)..........................................................................22

*Fogarty v. Gallegos*,
    523 F.3d 1147 (10th Cir. 2008).................................................................12, 25

*Gonzales v. Douglas*,
    No. cv-15-00064, 2016 WL 4530442 (D. Ariz. Aug. 30, 2016)....................................23

*Graham v. Barnette*,
    5 F.4th 872 (8th Cir. 2021) ...........................................................................22

*Graham v. Connor*,
    490 U.S. 386 (1989) .....................................................................................17

*Grider v. Bowling*,
    785 F.3d 1248 (8th Cir. 2015).........................................................................20

*Hall v. Ramsey County*,
    801 F.3d 912 (8th Cir. 2015)..........................................................................30

**TABLE OF AUTHORITIES**

(continued)

Page

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ..................................................................................27

*Heglund v. Aitkin County,*
    871 F.3d 572 (8th Cir. 2017).......................................................................32

*Hoggard v. Rhodes,*
    141 S. Ct. 2421 (2021)..........................................................................26, 27

*Hope v. Pelzer,*
    536 U.S. 730 (2002) ..................................................................................22

*Jackson v. Gerl,*
    622 F. Supp. 2d 738 (W.D. Wis. 2009) ......................................................23

*Jackson v. Stair,*
    944 F.3d 704 (8th Cir. 2019).......................................................................19

*Johnson v. McCarver,*
    942 F.3d 405 (8th Cir. 2019).................................................................24, 25

*Karels v. Storz,*
    906 F.3d 740 (8th Cir. 2018).......................................................................25

*Kingsley v. Hendrickson,*
    576 U.S. 389 (2015) ..................................................................................29

*Kohorst v. Smith,*
    968 F.3d 871 (8th Cir. 2020).......................................................................17

*Krupski v. Costa Crociere S.p.A.,*
    560 U.S. 538 (2010) ..................................................................................32

*Lambardo v. City of St. Louis,*
    38 F.4th 684 (8th Cir. 2022) ......................................................................22

*Lemery v. Beckner,*
    323 F. App'x 644 (10th Cir. 2009)...............................................................12

*Martinez v. Sasse,*
    37 F.4th 506 (8th Cir. 2022) ........................................................................9

# TABLE OF AUTHORITIES
### (continued)

<em>Page</em>

*Meloy v. Backmeier,*
    302 F.3d 845 (8th Cir. 2002).......................................................22

*Michael v. Trevena,*
    899 F.3d 528 (8th Cir. 2018)........................................................18

*Mitchell v. Kirchmeier,*
    28 F.4th 888 (8th Cir. 2022) ...................................................*passim*

*Montoya v. City of Flandreau,*
    669 F.3d 867 (8th Cir. 2012).......................................................25

*Neal v. Ficcadenti,*
    895 F.3d 576 (8th Cir. 2018).............................................. 6, 14, 17

*Nelson v. City of Davis,*
    685 F.3d 867 (9th Cir. 2012).......................................................12

*Oglesby v. Lesan,*
    929 F.3d 526 (8th Cir. 2019)................................................. 9, 11

*Quraishi v. St. Charles County, Missouri,*
    986 F.3d 831 (8th Cir. 2021).........................................................9

*Roe v. Wade,*
    410 U.S. 113 (1973) .................................................................27

*Scott v. Harris,*
    550 U.S. 372 (2007) .................................................................23

*Small v. McCrystal,*
    708 F.3d 997 (8th Cir. 2013).......................................................25

*Smith v. City of Dallas,*
    No. 3:18-cv-01684, 2018 WL 7075126 (N.D. Tex. Dec. 21, 2018) ...............21

*Steed, by & through Steed v. Missouri State Highway Patrol,*
    2 F.4th 767 (8th Cir. 2021) ........................................................11

*Superior Edge, Inc. v. Monsanto Co.,*
    44 F. Supp. 3d 890 (D. Minn. 2014) ............................................17

# TABLE OF AUTHORITIES

(continued)

*Page*

*Taylor v. City of Middletown*,
    436 F. Supp. 2d 377 (D. Conn. 2006)............................................................23

*Terebesi v. Torreso*,
    764 F.3d 217 (2d Cir. 2014).......................................................................23

*Torres v. Madrid*,
    141 S. Ct. 989 (2021)........................................................................*passim*

*United States v. Dortch*,
    868 F.3d 674 (8th Cir. 2017)............................................................9, 10, 11

*United States v. Warren*,
    984 F.3d 1301 (8th Cir. 2021).............................................................9, 11

*Ware v. Jackson County*,
    150 F.3d 873 (8th Cir. 1998)..................................................................30

*White v. Pauly*,
    137 S. Ct. 548 (2017)..........................................................................22

*Wilkins v. Gaddy*,
    559 U.S. 34 (2010) ........................................................................20, 21

*Wilson v. Lamp*,
    901 F.3d 981 (8th Cir. 2018)................................................................18, 20

*Young v. City of St. Charles*,
    244 F.3d 623 (8th Cir. 2001)....................................................................7

*Z.J. v. Kansas City Board of Police Commissioners*,
    931 F.3d 672 (8th Cir. 2019)..................................................................24

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017)......................................................................26, 27

*Zutz v. Nelson*,
    601 F.3d 842 (8th Cir. 2010)....................................................................7

## Statutes

42 U.S.C. § 1983.............................................................................5, 7, 26

**TABLE OF AUTHORITIES**
(continued)

*Page*

N.D.C.C. § 12.1-05-07 ...................................................................................................34

N.D.C.C. § 32-12.1-03 ...................................................................................................33

N.D.C.C. § 37-17.1-16 ...................................................................................................33

**Rules**

Federal Rule of Civil Procedure 8(a) .............................................................................17

Federal Rule of Civil Procedure 12(b) .............................................................................7

Federal Rule of Civil Procedure 15(c) ...........................................................................32

## INTRODUCTION

For the third time, Defendants seek to dismiss Plaintiff's claims by attempting to recast a *factual* dispute as a *legal* one.  From the beginning of this case, Plaintiff's fundamental story has not changed:  while the Backwater Bridge was calm and sparsely populated, Defendants Moll and Dvorak attacked Sophia with explosive less-lethal munitions without giving her an opportunity to leave, despite the fact that she was unarmed and posed no danger to anyone.  Defendants Moll and Dvorak and their law enforcement colleagues' coordinated use of wildly disproportionate force in the face of no apparent threat indicates that they were attempting to injure her.

Defendants disagree with this and assert the facts are different: they felt threatened and were only trying to disperse Plaintiff.  (Until discovery proved otherwise, Defendants also swore they never used any explosive munitions against Sophia at all.)  Defendants are entitled to argue this alternative factual narrative to a jury, but they are not entitled to use it to seek dismissal here.  A motion to dismiss is not a forum for factual findings.  A motion to dismiss only tests whether the *Plaintiff's* factual allegations—if true—are sufficient to state the causes of action she brings.  This is a very low bar, and Plaintiff's Second Amended Complaint undoubtedly passes it.

Plaintiff's allegation that she was brutally attacked by Defendants Moll and Dvorak for no legitimate reason and with no opportunity to leave states a claim for excessive force under the Fourth Amendment (and the Fourteenth).  The use of less-lethal explosive munitions against a peaceful, non-threatening, non-resisting civilian is objectively unreasonable, and it has been clearly established as such for decades.

## FACTS

Defendants' motions to dismiss should be denied based on the following facts from the Second Amended Complaint (cited as "Compl.").

A.       **Key Facts Relevant to Motions to Dismiss.**

<u>First</u>, the attack on Sophia took place on Backwater Bridge around 4:00 a.m., when only a few protesters remained in the vicinity and the area had been calm and peaceful for hours. Compl. ¶¶ 111–114, 120–121. These circumstances render irrelevant all of the events and conflicts between protesters and law enforcement that occurred hours, days, and even weeks before.

<u>Second</u>, between 2:00am and 4:00am on the night Sophia was injured, all of the protesters (including Sophia) were south of the concrete barricades covered in razor-wire, and none of the protesters (including Sophia) were attempting to breach the barricade or threatening law enforcement in any way. *Id.* ¶ 114. As a result, Defendants were not in a "defensive posture" or under attack, there was no emergency, and therefore there was no legitimate basis for using force against any protester (including Sophia) without first giving them a clear command to disperse and providing them a reasonable opportunity to comply.

<u>Third</u>, prior to standing near the truck where she was attacked, Sophia had been present on Backwater Bridge unarmed and unobscured in the presence of law enforcement for an extended period of time without any objection from any law enforcement officer, including Defendants Moll and Dvorak. *Id.* ¶¶ 123, 126. This implies: (1) Sophia had a reasonable basis for believing that she was allowed to be on Backwater Bridge south of the barricade; (2) Defendants Moll and Dvorak (and their colleagues) knew Sophia was unarmed; and (3) Defendants Moll and Dvorak (and their colleagues) consented to Sophia being present on the bridge south of the barricade.

<u>Fourth</u>, Sophia approached the truck unarmed in clear view of law enforcement and then stood near the truck peacefully for more than 30 minutes without any objection from Defendants Moll or Dvorak (or their colleagues). *Id.* ¶¶ 124–127. This further supports the inference that Defendants Moll and Dvorak knew Sophia was not armed (even if she was subsequently partially

and temporarily obscured by a metal sheet), that they did not believe she posed any threat to anyone, and that she was allowed to be standing near the truck.  If Defendants Moll or Dvorak (or their colleagues) were legitimately concerned that Sophia posed a threat, they would not have waited 30 minutes to do anything about it.

Fifth, neither Sophia nor Stephen Joachinson ever threatened or menaced any law enforcement officer or attempted to tamper with or get under the truck.  *Id.* ¶¶ 128–131.  Thus, there was no legitimate basis for attacking them, especially before giving them a clear order to leave and a reasonable opportunity to comply.

Sixth, when law enforcement issued an order to get out from under the truck, Stephen promptly explained that there was no one under the truck.  *Id.* ¶ 132.  This made it clear to Defendants Moll and Dvorak (and their colleagues) that Stephen and Sophia did not believe there was any pending law enforcement order with which they needed to comply.

Seventh, rather than issuing any additional directions or orders, Defendant Moll (and his colleagues) immediately began attacking Sophia and Stephen with less-lethal weapons, thereby pinning Sophia behind the metal sheet.  *Id.* ¶¶ 133–134.  This attack was coordinated, unprovoked, unjustified by any legitimate law enforcement objective, and grossly disproportionate to the needs of the situation.  Therefore, a plausible inference is that Officers Moll and Dvorak (and their colleagues) were not intending to disperse Sophia or protect themselves but were instead motivated by malice and attempting to injure Sophia.

Eighth, as part of the attack on Sophia, Defendant Dvorak threw two stinger grenades *toward* her.  *Id.* ¶¶ 135–136.  Defendant Dvorak was therefore actively participating in the unprovoked and disproportionate attack on Sophia.  Defendant Dvorak violated ordinary law enforcement practices, manufacturer warnings, and basic safety standards by not only failing to

inspect the detonation area before deploying explosives, but by aiming those explosives at an individual. Defendant Dvorak's deployment of the first grenade toward Sophia while she was trapped, and his deployment of a second grenade when the first one failed to hit her imply that he was trying to injure and detain her, not disperse her. By deploying the grenades over the truck such that they landed behind Sophia (rather than between Sophia and the barricade), Defendant Dvorak prevented her from leaving, rather than encouraging her to do so.

Ninth, Sophia was hit by a less-lethal munition while she was trapped behind the metal sheet by Defendant Dvorak's stringer grenades. *Id.* ¶¶ 137–140. Thus, Defendant Dvorak's intentional participation in the coordinated attack on Sophia was a proximate cause of her getting injured by a less-lethal munition.

Tenth, after Sophia was hit, she began running south away from the barricade while clearly unarmed and pleading, "I'm leaving. Please don't shoot." *Id.* ¶¶ 141–143. This only reinforces the prior inference that Defendants Moll and Dvorak (and their colleagues) knew Sophia was not armed, not posing a threat to anyone, and not resisting, such that there was no legitimate basis for using force against her.

Eleventh, while Sophia was running south, Defendant Moll (and his colleagues) continued shooting at her. *Id.* ¶¶ 144–148. This implies Defendant Moll (and his colleagues) were trying to injure her, not disperse her or compel her to comply with law enforcement orders.

Twelfth, Sophia was hit by an explosive munition fired at her by Defendant Moll the moment she stopped to pick up a piece of plywood. *Id.* ¶¶ 144–148. This implies that Defendant Moll loaded the explosive munition into his gun and formed an intent to shoot her with it *before* she stopped running. As a result, Defendant Moll was not in a defensive posture or worried that Sophia was engaging in misconduct when he injured her.

Thirteenth, after Sophia was grievously injured and screaming in pain, Defendants Moll and Dvorak (and their colleagues) laughed and cheered and made no attempt to help her. *Id.* ¶¶ 151–155. Again, this implies Defendants Dvorak and Moll *intended* to injure Sophia.

Fourteenth, in the days, weeks, and months after Sophia was injured, Defendant Kirchmeier repeatedly told the national media that law enforcement did not deploy any explosive munitions against Sophia. *Id.* ¶¶ 164–167. This suggests that Defendants *knew* they had used excessive force and were trying to cover it up.

Together, these concrete factual allegations state a claim against Defendants Moll and Dvorak for a violation of 42 U.S.C. Section 1983. These facts establish that: (1) Sophia was seized, both when she was detained behind the metal sheet by Defendant Dvorak until she was hit with a less-lethal munition and when she was knocked to the ground by Defendant Moll's explosive munition; (2) Defendants Moll and Dvorak acted with an intent to injure and detain Sophia; (3) Defendants Moll and Dvorak engaged in force that was objectively unreasonable under the circumstances; and (4) the objective unreasonableness of this excessive force was clearly established by prior law, so Defendants Moll and Dvorak are not entitled to qualified immunity.

### B.      The Additional Facts Proposed by Defendants Are Irrelevant.

Defendants collectively spend more than a dozen pages of their briefs attempting to inject their own factual allegations into their motions to dismiss. ECF No. 271 ("Municipal Mot.") at 5–18; ECF No. 266 ("State Mot.") at 4–6. This should immediately raise suspicion that Defendants are not merely objecting to the legal sufficiency of Plaintiff's claims.

Defendants propose three basic categories of additional facts: Sophia's own deposition testimony (Municipal Mot. at 5–11), twenty supposed matters of public record (Municipal Mot. at 11–16), and this Court's prior determinations in *Dakota Access, LLC v. Archambault*, No. 1:16-

cv-296, 2016 WL 5107005 (D.N.D. Sept. 6, 2016) and *Dundon v. Kirchmeier*, 577 F. Supp. 3d 1007 (D.N.D. 2021) ("*Dundon II*") (Municipal Mot. at 17–18; State Mot. at 5–6). But Defendants fail to provide any explanation for how any of these proposed additional facts contradict the allegations in the Second Amended Complaint or otherwise undermine the legal sufficiency of Plaintiff's claims. For example, Defendants allege that Sophia was aware when she went to Backwater Bridge that law enforcement officers had been using less-lethal weapons against protesters there hours earlier (Municipal Mot. at 7), but this allegation is irrelevant because it does not make the use of such weapons appropriate or reasonable. All of the proposed facts relating to events that occurred hours, days, or even weeks before Sophia was injured are similarly irrelevant because the circumstances had changed and the bridge was calm and peaceful when Sophia was attacked. Defendants cannot rely on these earlier events—such as the chaotic mass protest that occurred hours earlier—because "a reasonable [law enforcement] officer is not permitted to ignore changing circumstances." *Neal v. Ficcadenti*, 895 F.3d 576, 581 (8th Cir. 2018)).

Several of the facts Defendants propose actually support Plaintiff's claims. Defendants assert that the attack on Sophia occurred "in an isolated rural area" and "approximately one mile" from the DAPL drill pad. Municipal Mot. at 14. These facts only serve to bolster the inferences that the general public was in no danger and that the protesters posed no imminent threat to DAPL or any other private property. That just makes the use of explosive less-lethal weapons even less reasonable.[1] Similarly, Defendants assert that "Sheriff Kirchmeier was [officially] designated as the overall incident commander" for the law enforcement response to the DAPL protests.

---

[1] Defendants may allege they believed they were in danger, but they knew Sophia was unarmed, and they were protected by armored vehicles, concrete barricades, and spools of razor wire. Defendants may also allege they were trying to prevent the removal of the remaining burned-out truck, but it strains credulity to suggest that anyone was worried Sophia and Stephen were somehow going to move a massive truck by themselves with no tow-truck in sight.

Municipal Mot. at 14 ¶ 12.  This supports Plaintiff's allegation (which Defendants previously denied) that Defendant Kirchmeier had ultimate responsibility for the law enforcement response to the DAPL protests such that the officers present at that protest (including Defendants Dvorak and Moll) were operating under Defendant Kirchmeier's authority, direction, and supervision.

The rest of Defendants' proposed additional facts are simply an attempt to convince the Court that Defendants' use of force was justified.  That inference is directly contradicted by the well-pled plausible factual allegations in the Second Amended Complaint, which must be assumed true at this stage.

## **ARGUMENT**

## I.   **LEGAL STANDARDS.**

The parties agree on the applicable legal standards for Defendants' motions to dismiss.  A Rule 12(b)(6) motion to dismiss eliminates only those actions "which are fatally flawed in their legal premises."  State Mot. at 3–4 (quoting *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001)).  Therefore, on a motion to dismiss, the Court must "accept the complaint's allegations as true," *id.* at 4 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)), and "view them in the light most favorable to the nonmoving party," *id.* (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009)).  To survive Defendants' motions to dismiss, Plaintiff need only plead "sufficient factual matter . . . to state a claim for relief that is plausible on its face."  *Id.* (quoting *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010)).  At this stage, the illegality of Defendants' conduct need only be *a* plausible inference from the facts alleged in the Second Amended Complaint; it need not be the *only* plausible, or even the *most* plausible, inference.

To state a Fourth Amendment excessive force claim under 42 U.S.C. § 1983, Plaintiff must plead facts that plausibly imply three things:  (1) she was seized, (2) Defendants used objectively

unreasonable force against her, and (3) Defendants are not entitled to qualified immunity. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1207–213 (8th Cir. 2013). Plaintiff plausibly pleads each of these three elements with respect to each of Defendants Moll and Dvorak.

## II.   PLAINTIFF WAS SEIZED BY DEFENDANTS MOLL AND DVORAK.

Defendants mistakenly rely on *Torres v. Madrid*, 141 S. Ct. 989 (2021), to argue that Sophia was not seized by either Defendant Dvorak or Defendant Moll. Municipal Mot. at 23–26; State Mot. at 8–10. In *Torres*, a police officer shot at and hit a fleeing automobile driver with an intent to restrain her, but she managed to get away (temporarily). *Id.* at 994. The *Torres* Court held that the "application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued." *Id.* at 1003. *Torres* is materially different from the present case in two distinct ways: (1) unlike the plaintiff in *Torres* who got away, Sophia was successfully physically detained; and (2) unlike the defendants in *Torres* who conceded to having an intent to restrain, Defendants Dvorak and Moll claim their only intent was to disperse. *Torres* is thus doubly inapplicable.

### A.   Plaintiff Was Physically Restrained, so *Torres* Does Not Apply.

The *Torres* Court expressly distinguished between seizures by acquisition of control and seizures by force, noting that "each type of seizure enjoys a separate common law pedigree and gives rise to a separate rule." *Id.* The *Torres* Court then reiterated the longstanding rule for seizures via control: "[u]nlike a seizure by force, a seizure by acquisition of control involves either voluntarily submission to a show of authority or the termination of freedom of movement." *Id.* Under the longstanding rule for seizures by control, an individual is seized whenever law enforcement's use of force meaningfully interferes with her freedom of movement, and a reasonable person under the circumstances "would have believed [s]he was not free to leave."

*United States v. Dortch*, 868 F.3d 674, 677 (8th Cir. 2017); *see also Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019) (seizure by control occurs when law enforcement "restrain[s] the liberty of a citizen").  The *Quraishi* case cited by Defendants also reiterates this traditional rule, noting that a seizure occurs whenever an officer "has in some way restrained the liberty of a citizen." *Quraishi v. St. Charles Cnty., Mo.*, 986 F.3d 831, 839 (8th Cir. 2021). So does the *Warren* case cited by Defendant Dvorak.  *United States v. Warren*, 984 F.3d 1301, 1303 (8th Cir. 2021) ("[A] person is seized within the meaning of the Fourth Amendment 'when the officer, by means of physical force or show of authority, terminates or restrains [the person's] freedom of movement.'").  <u>A seizure by control has no intent requirement.</u>

Defendants' reliance on *Martinez*, *Quraishi*, *Black Lives Matter*, and this Court's opinion in *Dundon II* are misplaced because those cases all involved situations in which the plaintiff was not physically restrained; i.e., seizures by force, not seizures by control.  *Martinez v. Sasse,* 37 F.4th 506, 509 (8th Cir. 2022) (plaintiff prevented from entering ICE facility but not physically restrained); *Quraishi*, 986 F.3d at 840 (use of tear-gas on protesters did not physically restrain them); *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 48–49 (D.C. 2021) (use of flashbangs and other munitions against protesters did not result in any protester being physically restrained); *Dundon II*, 577 F. Supp. 3d at 1007 (not finding any protester was physically restrained by any use of force by law enforcement).

Unlike those cases, this case involves seizures by control.  Defendants Moll and Dvorak each separately seized Sophia by terminating her freedom of movement and restraining her liberty. Defendants' argument that even a seizure by control requires intent to restrain has no basis in any case cited by Defendants.  It also has no basis in common sense.  If Defendants had their way, Defendant Moll would not violate the Fourth Amendment even if he had pulled out his sidearm

and shot Sophia in the back several times, paralyzing or even killing her, as long as he credibly claimed he was trying to disperse her, rather than restrain her.  That cannot possibly be correct. To the contrary, that is precisely why a "seizure by control" (unlike a seizure by force) does not require any intent to restrain.

1.     Defendant Moll Terminated Sophia's Freedom of Movement.

This Court has already ruled that Plaintiff plausibly pled that Defendant Moll seized Sophia by physically restraining her movement with an explosive munition.  ECF No. 46 at 47 ("Her facts support a plausible finding Defendant Officer Doe intended to control her physical movement, and he succeeded in doing so when he terminated her freedom of movement by intentionally throwing an explosive less-lethal munition at her.").  Indeed, Defendant Moll's munition indisputably interfered with Sophia's freedom of movement, and a reasonable person under the circumstances "would have believed [s]he was not free to leave." *Dortch*, 868 F.3d at 677.  That is all that is required to establish a seizure by control.

Defendant Moll attempts to avoid this result by asserting that Plaintiff "has not alleged she was arrested or restrained by law enforcement."  Municipal Mot. at 29.  That is simply false. Plaintiff has persistently alleged that she was restrained by law enforcement ever since her original complaint.  The core of her claims is (and has always been) that Defendant Moll knocked her to the ground and rendered her unable to move by hitting her with an explosive munition.  This restraint of her freedom of movement is a seizure by control (regardless of Defendant Dvorak's intent).

2.     Defendant Dvorak Terminated Sophia's Freedom of Movement.

Separate and apart from being a proximate cause of Sophia's grievous injury by an explosive munition, Defendant Dvorak also seized Sophia by using stinger grenades to trap her

behind the metal sheet.  As soon as law enforcement began attacking Sophia, she wanted to leave the area, but she could not do so because Defendant Dvorak's explosives (and his colleagues' less-lethal munitions) prevented her from moving away from the metal sheet.  Because Defendant Dvorak deployed his stinger grenades behind Sophia, she could not move away from the sheet without getting hit and injured.  Under these circumstances, a reasonable person would not have believed herself free to leave, so Sophia's liberty and freedom of movement were restrained, resulting in a seizure (regardless of Defendant Dvorak's intent).  *Dortch*, 868 F.3d at 677; *Oglesby*, 929 F.3d at 532.

Defendant Dvorak argues no seizure occurred because he did not physically touch Sophia.  State Mot. at 10–11.  But a show of force results in a seizure if it results in the restriction of physical movement even if there is no physical contact.  *See e.g., Warren*, 984 F.3d at 1303.  Because he successfully trapped Sophia behind the metal sheet with his stinger grenades thereby interfering with her freedom of movement, Defendant Dvorak's assertion that no seizure occurred is unavailing and his citation to *Steed* is inapplicable.  State Mot. at 10–11 (quoting *Steed, by & through Steed v. Mo. State Highway Patrol*, 2 F.4th 767, 770 (8th Cir. 2021)).  Like *Torres*, *Steed* involved a situation in which law enforcement failed to successfully physically restrain the individual.  *Steed*, 2 F.4th at 769.  Neither *Torres* nor *Steed* are applicable here because Defendant Dvorak (and Defendant Moll after him) succeeded in physically restraining Sophia.

**B.      Plaintiff Satisfies the *Torres* Test for Seizure by Force.**

*Torres* holds that whenever force is applied with intent to restrain there is a seizure.  Defendants misunderstand that this is *not* the same as holding that whenever force is applied without intent to restrain there is *no* seizure.[2]  The *Torres* Court expressly disclaimed opining on

---

[2] "If x then y" is not equivalent to "if not x then not y."

whether force applied without intent to restrain could ever be a seizure: "[i]n this opinion we consider only force used to apprehend. We do not accept the dissent's invitation to opine on matters not presented here—pepper spray, flash-bang grenades, lasers, and more." *Torres*, 141 S. Ct. at 998. In other words, the majority in *Torres* expressly disclaimed application of its holding to cases like this one involving crowd-control devices like flashbangs. Therefore, *Torres* does not abrogate the numerous prior precedents holding that protesters temporarily immobilized by less-lethal munitions are seized for purposes of the Fourth Amendment. *See, e.g., Nelson v. City of Davis*, 685 F.3d 867, 875–77 (9th Cir. 2012) (protesters seized by pepper-balls fired with intent to disperse); *Lemery v. Beckner*, 323 F. App'x 644 (10th Cir. 2009) (same); *Fogarty v. Gallegos*, 523 F.3d 1147, 1152 (10th Cir. 2008) (same); *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006) (protester seized when shot with bean bag munition). The Court should reject Defendants' attempt to expand the *Torres* decision well past its holding to the present case.

But even if this Court concludes that *Torres* applies here, Plaintiff satisfies the *Torres* test because she has alleged facts plausibly implying that Defendants Dvorak and Moll both intended to injure and restrain Sophia, rather than disperse her. The *Torres* test is objective, so the subjective intent of the Defendants and the subjective beliefs of the Plaintiff are both irrelevant. *Torres*, 141 S. Ct. at 998-99. Instead, the only question is whether Defendant Moll's and Defendant Dvorak's uses of force objectively manifested an intent to restrain. When evaluating this question on a motion to dismiss, the Court must make all reasonable inferences in Plaintiff's favor. *Id.* at 999.

### 1.   Defendant Moll Intended to Restrain/Injure Sophia.

This Court has already ruled that Plaintiff plausibly pleaded that Defendant Moll intended to restrain her: "[Plaintiff's] facts support a plausible finding Defendant Officer Doe intended to control her physical movement . . . ." Dkt. 46 at 45–47 (citing *Atkinson*, 709 F.3d at 1208). And

the Second Amended Complaint contains numerous factual allegations to support this ruling.  First, Defendant Moll and his colleagues allowed Sophia to be present on the bridge for more than an hour and next to the truck for 30 minutes without objection, which implies they were not interested in dispersing her.  Compl. ¶¶ 123–127.  Second, they did not respond to Stephen's explanation that no one was under the truck, issue any additional order to disperse, or give Sophia an opportunity to leave before attacking her, which again implies they were not interested in dispersing her.  *Id.* ¶¶ 132–133.  Third, Defendant Moll and his colleagues continued aiming and shooting at Sophia while she was running away, conduct completely inconsistent with wanting her to disperse.  *Id.* ¶¶ 142–148.  Fourth, aiming and firing an explosive munition like an Aerial Warning/Signaling munition directly at someone is inconsistent with wanting them to disperse and is direct evidence of intent to injure.  *Id.* ¶¶ 148–149.  Fifth, Defendant Moll and his colleagues laughed and cheered when Sophia was injured, which is not consistent with merely trying to disperse her—if they had only intended to disperse her, they would have reacted in horror and offered aid once they realized she was immobilized and grievously injured.  *Id.* ¶¶ 154–155.  All of these well-pled factual allegations justify the inference that Defendant Moll objectively manifested an intent to restrain and harm Sophia, not disperse her.

The additional allegations Defendant Moll proposes do not—individually or collectively—dislodge the inference that he intended to restrain and injure Sophia.  First, he asserts that he and his colleagues always remained behind the protective barricade.  Municipal Mot. at 27.  The existence of this barricade actually supports Plaintiff's allegation that Defendants had no reason to be fearful and therefore no intent to repel Sophia.  Second, he asserts Sophia was "always able to, and did, leave the area where force was being applied."  *Id.* at 27.  But that, of course, was not true after Defendant Moll hit her with an explosive and left her lying on the ground bleeding and unable

to move.  Third, he asserts that before Sophia was injured there was a large confrontation at Backwater Bridge.  *Id.* at 28.  This is true but irrelevant since no confrontation or chaos was occurring on the Bridge when he attacked and injured Sophia.  Fourth, he asserts the bridge was closed.  *Id.*  Even if this were true, it would be irrelevant because law enforcement's lack of objection to Sophia's presence on the bridge for hours objectively indicated that she was allowed to be there and that no law enforcement officer wanted to disperse her.  Fifth, he asserts Sophia knew before coming to the bridge that less-lethal weapons had been used there earlier in the night. *Id.*  This is wholly irrelevant to Defendant Moll's intent.  *See Neal*, 895 F.3d at 581 (noting law enforcement officers must consider changing circumstances over time).  Sixth, he asserts that Sophia was warned to move before force was applied.  But Plaintiff specifically pleaded that the order that was given was not directed at her and that she was not given an opportunity to leave before force was applied.  If Defendant Moll and his colleagues had actually wanted Sophia to merely disperse, they would have responded to Stephen's explanation and clarified that they wanted Stephen and Sophia to leave before attacking them.

In short, none of Defendant Moll's allegations manifest an objective intent to disperse Sophia or undermine the inference that he intended to restrain her.[3]

### 2.    Defendant Dvorak Intended to Restrain/Injure Sophia.

Defendant Dvorak likewise asserts that his attack on Sophia was "motivated by an intent to disperse," State Mot. at 8, but this assertion contradicts the same well-pled factual allegations that support the inference that Defendant Moll intended to restrain Sophia.  Like Defendant Moll,

---

[3] Defendant Moll also argues that it was not clearly established in November 2016 that the use of force with intent to disperse constituted a seizure.  Municipal Mot. at 25–26.  While Plaintiff disagrees with that assertion, it is irrelevant because Plaintiff is not alleging that Defendant Moll intended to disperse her; she is alleging that Defendant Moll intended to restrain and injure her.

Defendant Dvorak allowed Sophia to be present on the bridge for more than an hour and next to the truck for 30 minutes without objection. Like Defendant Moll, Defendant Dvorak did not respond to Stephen's explanation that no one was under the truck or provide Sophia was an opportunity to leave before attacking her. And Like Defendant Moll, Defendant Dvorak celebrated Sophia's injury and made no attempt to render aid. All of this implies Defendant Dvorak was not interested in dispersing her and instead intended to restrain and injure her.

Defendant Dvorak's particular use of force is completely inconsistent with an intent to disperse. Deploying explosives over a barricade so that they land *behind* someone does not encourage them to move, it prevents them from doing so. It traps them. Indeed, explosive munitions like stinger ball grenades are a completely inappropriate weapon for trying to expel a single individual. These explosives are supposed to be used in the midst of riots where there is already a high risk of injury created by a large number of violent (or potentially violent) individuals. Deploying explosives at—or even near—specific individuals is completely inappropriate and is only consistent with an intent to injure.

The additional factual allegations Defendant Dvorak proposes do not—individually or collectively—dislodge the inference that he intended to restrain and injure Sophia. First, he asserts that protesters had previously partially dismantled a critical defensive barricade and that he was worried Sophia would do the same. *Id.* at 8–9. That allegation is found nowhere in the complaint, and it isn't true. Even during the height of the confrontation at Backwater Bridge on the evening of November 20, 2023, none of the protesters dismantled any of the concrete blocks or razor wire. And even if Defendant Dvorak is referring to the prior use of a tow truck to move one of the burned-out trucks, it is completely implausible that Defendant Dvorak was worried that Sophia and Stephen were going to move or compromise the nearby truck by themselves without a tow-

truck.  Simply put, Sophia was obviously not a plausible threat to anyone or to the barricade erected by law enforcement.  Second, Defendant Dvorak asserts Sophia was concealed, but he does not explain why this would support an inference that he was intended to disperse her.  *Id.* at 9.  He knew she was unarmed because she had been walking around the Bridge for hours, and he let her stay next to the truck for 30 minutes before attacking her, indicating that he did not believe she was a threat, even when partially concealed.  Third, like Defendant Moll, Defendant Dvorak asserts that Sophia was ordered to move before being attacked.  But again, that order was not directed to Sophia, Stephen responded to that order with an explanation, and neither Defendant Dvorak nor anyone else ever attempted to clarify the order or provide an opportunity for Sophia to leave before attacking her.  Fourth, Defendant Dvorak asserts that any attempt to restrain Sophia failed because she eventually ran south.  *Id.*  But this completely ignores the fact that Sophia was restrained against the metal sheet for more than a minute and had already been seriously injured with a less-lethal munition (that left a permanent scar) before she was able to flee.  That temporary restraint was still a seizure, and it still resulted in serious injury separate and apart from the explosive munition that destroyed her left forearm.

For these reasons, even under the *Torres* test, Defendant Dvorak's conduct (taken in the light most favorable to Plaintiff) objectively manifested an intent to restrain and injure Sophia.

### C.  In Light of This Seizure Dispute, the Court Should Allow Plaintiff to Plead Her Fourteenth Amendment Claim in the Alternative.

When this Court previously dismissed Plaintiff's Fourteenth Amendment claim, it did so partially on the grounds that a seizure had occurred, so Plaintiff's excessive force claim was properly brought under the Fourth Amendment.  Dkt. 46 at 17 ("If Wilansky was not seized pursuant to the Fourth Amendment but was rather a free citizen or non-detainee at the time Defendant Officer Doe allegedly subjected her to physical injury, her claim would appropriately

be brought under the Fourteenth Amendment.").  Plaintiff agrees that she was seized and that the Fourth Amendment is therefore an appropriate constitutional vehicle for her excessive force claim. However, this is now the third time that Plaintiff has had to argue the seizure issue, and it is unlikely to be the last.  Because seizure is likely to be a live issue throughout this litigation, Plaintiff should be allowed to plead her Fourteenth Amendment excessive force claim in the alternative.  "[T]he Federal Rules of Civil Procedure explicitly allow parties to include in their pleadings demands for alternative relief, set out 2 or more statements of a claim or defense alternatively or hypothetically, and state as many separate claims or defense as it has, regardless of consistency."  *Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 900 (D. Minn. 2014) (quoting Fed. R. Civ. P. 8(a)) (internal quotation marks omitted).  Allowing both of Plaintiff's excessive force theories to move forward will not increase litigation complexity or cost because both theories involve precisely the same discovery and many of the same arguments.  For these reasons, the Court should not dismissed the Fourteenth Amendment cause of action found in the Second Amended Complaint.

**III.   DEFENDANT MOLL AND DEFENDANT DVORAK DEPLOYED EXCESSIVE FORCE AGAINST SOPHIA.**

The Parties and the Court agree that the standard for whether force is excessive under the Fourth Amendment is "whether the amount of force used was objectively reasonable under the particular circumstances."  Dkt. 46 at 48 (quoting *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020)); *accord*. State Mot. at 12.  To determine whether force is objectively reasonable, Courts look at three factors: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight."  *Mitchell v. Kirchmeier*, 28 F.4th 888, 898 (8th Cir. 2022) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal punctuation omitted)); *accord Neal*, 895 F.3d at 580–81.  In light of these factors, "force is least justified

against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Michael v. Trevena*, 899 F.3d 528, 532–33 (8th Cir. 2018). The Eighth Circuit has "held time and again that, if a person is not suspected of a serious crime, is not threatening anyone, and is neither fleeing nor resisting arrest, then it is unreasonable for an officer to use more than *de minimis* force against him." *Mitchell*, 28 F.4th at 898.

### A.  Defendant Moll Used Excessive Force Against Sophia.

Defendant Moll does not appear to contest that his deployment of an explosive munition against Sophia—while she was far from the truck, unarmed, and compliant—was excessive force. Indeed, this Court already concluded that it was, based on the allegations in the original Complaint. Dkt. 46 at 48–50. The more detailed allegations in the Second Amended Complaint only make Defendant Moll's use of force more transparently excessive and unreasonable.

Applying the *Graham* factors—severity of crime, immediacy of safety threat, and existence of resistance—Defendant Moll's use of an explosive munition against Sophia was objectively unreasonable. When Defendant Moll aimed and launched the explosive munition at Sophia, she was running away from the barricade clearly unarmed. It was thus apparent to Defendant Moll that she was committing no crime,[4] posing no safety threat (let alone an immediate one), and not resisting. "Force may be objectively unreasonable when a plaintiff does not resist, lacks an opportunity to comply with requests before force is exercised, or does not pose an immediate safety threat." *Wilson v. Lamp*, 901 F.3d 981, 989 (8th Cir. 2018); *see also Trevena*, 899 F.3d at 532–33 ("[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist

---

[4] Even before she was fleeing, the worst crime Defendants have claimed they worried Sophia might have been committing was trespassing and tampering with the barricade, neither of which of which are severe or violent.

arrest and pose little or no threat to the security of the officers or the public."); *Jackson v. Stair*, 944 F.3d 704, 713 (8th Cir. 2019). Under *Mitchell*, Defendant Moll was only entitled to use *de minimis* force against Sophia. 28 F.4th at 898. It goes without saying that hitting her with an *explosive* that destroyed her arm was not *de minimis* force. In *Mitchell*, the Eighth Circuit held that the use of even *non-explosive* less-lethal munitions under similar circumstances was not objectively reasonable. *Id.* If anything, the facts here are even more favorable to Plaintiff than those in *Mitchell* because the plaintiff in *Mitchell* was obstructing a government function, was given a prior warning, and had an opportunity to leave before he was shot. *Id.* In light of *Mitchell*, there is no question Defendant's Moll's conduct was objectively unreasonable and therefore constituted excessive force.

      **B.**     **Defendant Dvorak Used Excessive Force Against Sophia.**

      In direct violation of the manufacturer's warning and standard law enforcement policies and training, Defendant Dvorak threw not one, but two, explosive munitions at an unarmed girl who was not engaged in any serious crime and was not posing any threat or resisting any law enforcement order. [5] Am. Compl. ¶¶ 135–136. Under the standard articulated in *Mitchell* and the factors articulated in *Graham*, this use of more than *de minimis* force was objectively unreasonable. *Mitchell*, 28 F.4th at 898. Defendant Dvorak contests this, but by mischaracterizing the allegations against him. He claims the Complaint alleges only "that the Stinger grenades were deployed closer than perhaps they should have been for purposes of dispersing Wilansky." State

---

[5] The Court should disregard Defendant Dvorak's attempts to muddy the waters by quoting cases that make allowances for law enforcement officers making "split-second judgments" in "tense, uncertain, and rapidly evolving" circumstances. State Mot. at 12. Sophia had been on the bridge in clear view of law enforcement for more than hour and had been standing next to the truck for 30 minutes before she was attacked. Compl. ¶¶ 123, 126–127. Defendant Dvorak and his colleagues therefore knew she was not armed and posed no threat. No split-second judgments were needed here, and any tension and uncertainty were generated solely by law enforcement itself.

Mot. at 12.  But that isn't what Plaintiff has alleged at all.  Plaintiff alleges that Defendant Dvorak threw the grenades *toward* her, Compl. ¶ 135, and that he did so with an intent to *injure* her.  That alleged conduct is objectively unreasonable.  Regardless, Defendant Dvorak's use of force would have been objectively unreasonable even under his own characterization because Stinger grenades are not *de minimis* force.  Under prior case law, even deploying less-lethal explosive munitions without a prior inspection of the detonation area is clearly established excessive force.  *See*, *infra*, Section IV.B.

Defendant Dvorak also argues that his deployment of stinger grenades cannot constitute excessive force because the grenades themselves did not hit Sophia.  State Mot. at 12.  But those grenades were the proximate cause of Sophia's injury.  Defendant Dvorak's grenades pinned Sophia against the metal sheet, substantially contributing to her getting hit by the munition that permanently scarred her arm.  Compl. ¶¶ 136–140.  Defendant Dvorak's grenades also directly contributed to Sophia's mental injuries.  The terror created by those grenades is part of the ongoing mental trauma and anguish that Sophia experiences.  Am. Compl. ¶ 188.  The Eighth Circuit has held that mental injury, by itself, is sufficient to support an excessive force claim.  *Wilson*, 901 F.3d at 989 ("The officers argue [Plaintiffs] have not shown they were injured . . . [but] Post-traumatic stress disorder is a sufficient injury supporting an allegation of excessive use of force.").

The cases Defendants cite do not hold to the contrary.  *Grider v. Bowling*, 785 F.3d 1248 (8th Cir. 2015), simply requires that a plaintiff bringing an excessive force claim allege some injury, not that the injury be physical.  *Id.* at 1252.  *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011), and *Wilkins v. Gaddy*, 559 U.S. 34 (2010), both hold that an excessive force claim requires more than *de minimis* force (not injury) and that the severity of the injury may be evidence of the amount of force used.  *Chambers*, 641 F.3d at 906; *Wilkins*, 559 U.S. at 37.  Neither case

holds that the Plaintiff must have a non-*de minimis* physical injury to state a claim for excessive force. *See Chambers*, 641 F.3d at 906 ("We are not convinced, however, that evidence of only *de minimis* injury necessarily forecloses a claim of excessive force under the Fourth Amendment.)". *Wilkins* is additionally inapposite because it involved an Eighth Amendment claim, not a Fourth Amendment one. *Wilkins*, 559 U.S. at 37. The only case that arguably supports Defendants' assertion that an excessive force claim requires a physical injury is *Smith v. City of Dallas*, an unpublished lower-court magistrate decision from another jurisdiction that was not applying Eighth Circuit law and is not binding on this court. *Smith*, No. 3:18-cv-01684, 2018 WL 7075126, at *3 (N.D. Tex. Dec. 21, 2018). Even in *Smith*, the cases cited by the Court only require *an* injury, not necessarily a physical or severe one. *Id.*

Plaintiff has alleged that Defendant Dvorak's use of stinger grenades proximately caused both her physical and mental injuries, neither of which is *de minimis*. And the force used by Defendant Dvorak was clearly not *de minimis* either: stinger grenades are explosives, and the manufacturer specifically admonishes law enforcement officers not to deploy them near—let alone *toward*—people because they can cause significant injury and even death. Am. Compl. ¶¶ 75, 81. As a result, Plaintiff has adequately pled that Defendant Dvorak used excessive force.

## IV.   DEFENDANTS MOLL AND DVORAK ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

While Defendants argue they are entitled to qualified immunity, there are myriad precedents—both binding and persuasive—clearly establishing that the use of explosive less-lethal munitions against a nonviolent, non-threatening, non-resisting civilian violates the Fourth Amendment.

The parties agree on the standard for qualified immunity, which this Court already articulated in its decision on Defendants' first motion to dismiss: "Qualified immunity shields

government officials from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would know."  Dkt. 46 at 50 (quoting *Ferguson v. Short*, 840 F.3d 508, 510 (8th Cir. 2016)); *accord.* Municipal Mot. at 18 and State Mot. at 13 (both quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).   A constitutional violation is "clearly established," if the plaintiff can "point to existing circuit precedent that involves sufficiently similar facts to squarely govern the officers' conduct in the specific circumstances at issue," or "present a robust consensus of cases of persuasive authority constituting settled law."  Municipal Mot. at 30 (quoting *Graham v. Barnette*, 5 F.4th 872, 887 (8th Cir. 2021)); *accord.* Dkt. 46 at 51 (citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017) and *Meloy v. Backmeier*, 302 F.3d 845, 848 (8th Cir. 2002)); State Mot. at 13–14 (citing *Lambardo v. City of St. Louis*, 38 F.4th 684, 690 (8th Cir. 2022) and *Dixon v. Lowery*, 302 F.3d 857, 861 (8th Cir. 2002)).

Defendants assert they are entitled to qualified immunity because there was no clearly established preexisting precedent that their behavior was unconstitutional.  Municipal Mot. at 31–32; State Mot. at 14–15.  However, both Defendants are unclear as to whether they are alleging a lack of precedent that their behavior constituted a seizure or a lack of precedent that their behavior was objectively unreasonable (*i.e.*, excessive force).  Either way, they are wrong, as there is plenty of pre-existing precedent to establish both.

### A.    It Was Clearly Established in November 2016 that Defendants' Use of Explosive Munitions Was a Seizure.

Defendants cite no Supreme Court or Circuit precedent holding that a plaintiff must show her seizure was "clearly established" in order to bring an excessive force claim under the Fourth Amendment.  To the contrary, it is the excessiveness of the force, not the existence of a seizure that must be "clearly established" to avoid qualified immunity.  The purpose of the "clearly established" requirement is to ensure that law enforcement officers have reasonable prior notice

that their force is excessive, not that it constitutes a seizure.  It would be strange—and contrary to the spirit of qualified immunity—for a law enforcement officer to use force he knew was excessive and then seek qualified immunity by claiming he did not realize the force constituted a seizure.

Regardless, it was clearly established long before 2016 that the use of force to restrain movement constituted a seizure by control.  *Torres* explicitly recognized that the standard for seizure by control dated back to at least 1989, and the *Torres* Court did not purport to alter this standard in any way.  *Torres*, 141 S. Ct. at 1001 (noting distinction between seizures by control and seizures by force and reiterating that "each type of seizure enjoys a separate common law pedigree that gives rise to a separate rule.").  As examples of seizures by control, the *Torres* Court cited its 2007 decision in *Scott v. Harris*, 550 U.S. 372 (2007), its 1991 decision in *California v. Hodari D.* 499 U.S. 621 (1991), and its 1989 decision in *Brower v. County of Inyo*, 489 U.S. 593 (1989).  *Torres*, 141 S. Ct. at 1001.  All of these case long predate Defendants' uses of force to restrain Sophia.

### B.    It Was Clearly Established in November 2016 that Defendants' Use of Explosive Munitions Was Excessive and Violated the Fourth Amendment.

There are numerous pre-2016 decisions holding that it is excessive force to deploy an explosive munition—including explosive less-lethal munitions such as flashbangs, stinger grenades, and aerial signaling/warning munitions—toward an individual, especially one who is not violent or resisting.  *Terebesi v. Torreso*, 764 F.3d 217, 237 (2d Cir. 2014) (denying qualified immunity to officer who threw explosive munition at suspect and holding "[t]he Court cannot conceive of a set of circumstances that would permit an officer, contrary to the intended use of the device, to throw a flash-bang directly at someone); *Gonzales v. Douglas*, No. cv-15-00064, 2016 WL 4530442, *9 (D. Ariz. Aug. 30, 2016) (same); *Taylor v. City of Middletown*, 436 F. Supp. 2d 377, 386–87 (D. Conn. 2006) (same); *Jackson v. Gerl*, 622 F. Supp. 2d 738, 748 (W.D. Wis. 2009)

(denying qualified immunity to officer who deployed stinger grenade at non-compliant prisoner who refused to leave his cell).

In fact, numerous courts (including ones prior to November 2016) have held that it is excessive force even to deploy an explosive less-lethal munition without first visually inspecting the detonation zone to ensure no one is present. *Z.J. v. Kan. City Bd. of Police Comm'rs*, 931 F.3d 672, 683 (8th Cir. 2019) (blindly throwing explosive munition without prior visual inspection to ensure suspect is not in detonation zone was clearly established excessive force in 2010); *Estate of Escobedo v. Bender*, 600 F.3d 770, 779–81 (7th Cir. 2010) (blindly throwing explosive munition into area that may contain civilians is objectively unreasonable excessive force); *Boyd v. Benton Cnty.*, 374 F.3d 773, 779 (9th Cir. 2004) (same).  In fact, years before Defendants injured Sophia, the Eighth Circuit denied qualified immunity to an officer who deployed a less-lethal explosive munition *near* peaceful non-resisting detainees, holding that such behavior constituted clearly established excessive force even under the much more exacting Eighth Amendment standard. *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014).  After *Edwards* held that deploying explosive less-lethal munitions *near* non-resisting detainees was clearly established excessive force, reasonable officers were indisputably on notice that deploying explosive less-lethal munitions *toward* non-resisting civilians was excessive force.

If these numerous precedents—several from this Circuit—were not enough, courts have also long and consistently held that even the use of non-explosive less-lethal weapons (or less) against nonviolent, non-resisting civilians constitutes excessive force. *Johnson v. McCarver*, 942 F.3d 405, (8th Cir. 2019) (denying qualified immunity to officer who deployed Taser against suspect when there was genuine dispute about whether suspect was resisting); *Burke v. Sullivan*, 677 F.3d 361, 367 (8th Cir. 2012) (same); *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th

Cir. 2009) (same); *Fogarty*, 523 F.3d at 1161 (denying qualified immunity to officer who deployed less-lethal munition against nonviolent arrestee); *Deorle v. Rutherford*, 272 F.3d 1272, 1285–86 (9th Cir. 2011) (denying qualified immunity to officer who deployed less-lethal bean bag round against nonviolent arrestee); *Johnson*, 658 F.3d at 828 (denying qualified immunity to officer who tackled and deployed mace against suspected misdemeanant who was nonviolent and not resisting); *Karels v. Storz*, 906 F.3d 740, 745 (8th Cir. 2018) (denying qualified immunity to officer who body slammed suspect when there was genuine dispute about whether suspect was resisting); *Small v. McCrystal*, 708 F.3d 997, 1005–06 (8th Cir. 2013) (denying qualified immunity to officer who tackled non-resisting suspect); *Montoya v. City of Flandreau*, 669 F.3d 867, 872–83 (8th Cir. 2012) (denying qualified immunity to officer who performed leg sweep on nonviolent non-resisting suspect).

Defendants' only retort to this myriad of prior case law is to assert that there is no precedent that "the use of less-lethal munitions from a strictly defensive position" constitutes excessive force and that case law actually supports the use of less-lethal munitions to protect public safety and private property. Municipal Mot. at 31 (citing *Bernini v. City of St. Paul*, 655 F.3d 997 (8th Cir. 2012)). This Court has already rejected Defendants' attempt to rely on this "defensive posture" allegation, observing that it is "not found on the face of Wilansky's Complaint." Dkt. 46 at 52. According to the Second Amended Complaint, Defendants were not in a strictly defensive position because Sophia was not threatening them and was eventually even retreating. And Defendants concede they were not protecting public safety or private property because they were in a remote locale a mile away from the DAPL drill pad. Municipal Mot. at 14. Instead, both Defendants Dvorak and Moll attacked Sophia when she posed no plausible threat to any person or property. That makes *Bernini*—a case where law enforcement used tear gas (not explosives) against

"aggressive" (not peaceful) protesters causing "heavy property damage"—completely inapposite. Municipal Mot. at 31.

Finally, Defendants attempt to obtain qualified immunity by quoting at length from this Court's prior decision in *Dundon II*. State Mot. at 14–16 (quoting *Dundon*, 577 F. Supp. 3d at 1041–1043). Despite being a DAPL protest case, *Dundon II* involved very different factual circumstances and is not applicable here. In *Dundon II*, law enforcement deployed *non-explosive* less-lethal munitions against "a crowd of hundreds, if not a thousand" who were not uniformly peaceful and who were threatening law enforcement and attempting to breach the barricade. *Dundon*, 577 F. Supp. 3d at 1041. The officers in *Dundon II* also "provided a means of egress," *id.*, which was not provided here. Thus, *Dundon II* cannot save Defendants from the numerous prior precedents holding that the use of explosive less-lethal munitions against nonviolent non-resisting civilians is clearly established excessive force in violation of the Fourth Amendment.

### C.   Qualified Immunity Has No Basis in the Constitution or the Law and Should Be Categorically Rejected.

This Court should reject Defendants' qualified immunity defense for an additional reason: it has no basis in the text or spirit of the Constitution, Section 1983, or any other law. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1871 (2017) (Thomas, J., dissenting) ("[W] are no longer engaged in interpret[ing] the intent of Congress in enacting [Section 1983]. Our qualified immunity precedents instead represent precisely the sort of 'freewheeling policy choice[s]' that we have previously disclaimed the power to make."); *Hoggard v. Rhodes*, 141 S. Ct. 2421, 2421 (2021) (Thomas, J., dissenting from denial of cert.) ("[O]ur qualified immunity jurisprudence stands on shaky ground . . . [it] cannot be located in Section 1983's text and may have little basis in history."); *Baxter v. Bracey*, 140 S. Ct. 1862, 1862–63 (2020) (Thomas, J., dissenting from denial of cert.) ("The text of Section 1983 'ma[kes] no mention of defenses or immunities' . . . For the first century

of the law's existence, the Court did not recognize an immunity under Section 1983 for good-faith official conduct.").

Justice Thomas has long called for the abolishment (or at least the reassessment) of qualified immunity.  *See Ziglar*, 137 S. Ct. at 1871; *Hoggard*, 141 S. Ct. at 2421; *Baxter*, 140 S. Ct. at 1862–63.  While Justice Thomas has historically been in the minority on this issue, that no longer appears to be the case.  In *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022), the Supreme Court recently struck down the right to an abortion on the grounds that it did not have sufficient basis in the text of the Constitution and was not adequately supported by *stare decisis*. *Id.* at 2265.  In *Dobbs*, the Supreme Court applied the five traditional *stare decisis* factors to determine whether to adhere to a prior judicial precedent:  "the nature of their error, the quality of their reasoning, the 'workability' of the rules they imposed on the country, their disruptive effect on other areas of the law, and the absence of concrete reliance."  *Id.*

If *Roe* was an "abuse of judicial authority," then so is qualified immunity.  *Dobbs*, 142 S. Ct. at 2243.  <u>First</u>, the Court's error in creating qualified immunity is immense.  Qualified immunity protects public officials who are guilty of violating the Constitution, and it denies victims of constitutional violations a remedy for the harm they suffered.  <u>Second</u>, qualified immunity has less basis in the law than the right to an abortion and is a more recent doctrine. *Compare Harlow v. Fitzgerald*, 457 U.S. 800 (1982) *with Roe v. Wade*, 410 U.S. 113 (1973). While the *Roe* Court invoked the penumbra of the Bill of Rights, *Roe*, 410 U.S. at 129, the *Harlow* Court made no attempt at all to ground qualified immunity in any law or Constitutional provision. *Harlow*, 457 U.S. at 807.  <u>Third</u>, while the right to an abortion has been the subject of great controversy, it has generated far fewer judicial decisions than qualified immunity.  Qualified immunity is one of the least workable and most often litigated judicial doctrine of all time.  <u>Fourth</u>,

because qualified immunity applies to all manner of public officials and all manner of civil rights violations, it has impacted and disrupted numerous areas of the law, including free speech, the right to assemble, searches and seizures, and employment discrimination.  Applying qualified immunity routinely "requires courts to engineer exceptions to longstanding background rules, [so] the doctrine has failed to deliver the principled and intelligible development of the law that *stare decisis* purports to secure." *Dobbs*, 142 S. Ct. at 2276 (internal quotation marks omitted).  <u>Fifth</u>, public officials have no legitimate reliance interest in qualified immunity because the doctrine only applies when the official is already found to have broken the law.  Law enforcement officers who are acting legally do not need to rely on qualified immunity—they are already protected by the objective reasonableness standard.  Abolishing qualified immunity would do nothing more than require police officers—who the public pays with their tax dollars and imbues with the unique right to use violence—to abide by the same basic "reasonable person" standard that every member of the public must adhere to with respect to every common-law tort.

Qualified immunity has no basis in the text or spirit of the Constitution or any law.  Its continued existence is not justified by the traditional *stare decisis* factors, and this Court should decline to apply it here.

## V.   IN LIGHT OF *MITCHELL*, PLAINTIFF HAS ADEQUATELY PLEADED HER OTHER EXCESSIVE FORCE CLAIMS.

Given the complicated and unusual procedural history of this case, it is unclear to Plaintiff whether the Court considers itself to have already dismissed the Fourteenth Amendment (Count II) and *Monell* (Count III) claims found in the Second Amended Complaint. Compl. ¶¶ 200–225. In light of recent precedents that post-date this Court's decision on Defendants' original motion to dismiss, the Court should allow these claims to move forward to discovery.

**A.**    **The Fourteenth Amendment Claim Is Plausible and Adequately Pled.**

This Court previously dismissed Plaintiff's Fourteenth Amendment excessive force claim on the grounds that the misconduct alleged in the original Complaint did not "shock the conscience" as a matter of law.  Dkt. 46 at 16–23.  This Court agreed that the Supreme Court case *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), changed the Fourteenth Amendment excessive force standard from "shocks the conscience" to "objective reasonableness" for pretrial detainees, but declined to apply that change to claims brought by free citizens, like Plaintiff.  Dkt. 46 at 19. Plaintiff respectfully asks the Court to reconsider for three reasons.

First, the *Kingsley* Court indicated that it intended the objective reasonableness standard to apply not just to pretrial detainees but also to those who are free: "Our standard is also consistent with our use of an objective 'excessive force' standard where officers apply force to a person who, like Kingsley, has been accused but not convicted of a crime, but who, unlike Kingsley, *is free on bail*." 576 U.S. at 399.  Second, it does not make sense to apply the less demanding "objective reasonableness" standard to a pretrial detainee—someone who has already been arrested and arraigned and charged with a crime—while applying the more demanding "shock the conscience" standard to a free citizen not accused of any crime.  If anything, this is backwards:  the pretrial detainee should face the more demanding standard.  Third, declining to apply *Kingsley* to free citizens makes the applicable standard turn on the irrelevant fact of whether or not a free citizen happens to be on bail.  For these reasons, the Court should apply the same "objective reasonableness" standard to Plaintiff's Fourth and Fourteenth Amendment claims.

Even if the Court disagrees and continues applying the "shocks the conscience" standard, the Second Amended Complaint satisfies this standard.  Defendants Moll and Dvorak (1) allowed Sophia to be on the bridge for an hour and near the truck for 30 minutes without objection before

attacking her, (2) knew she was unarmed, (3) gave her no warning or opportunity to leave before the attack, (4) deployed explosive munitions toward her, and (5) laughed and cheered after she was injured.  Sophia was unarmed and peaceful throughout the entire encounter, so there was no legitimate government interest to justify the use of force.  These allegations give rise to the plausible inference that Defendants Moll's and Defendant Dvorak's uses of force were "inspired by malice or sadism rather than a merely careless or unwise excess of zeal."  *Hall v. Ramsey Cnty.*, 801 F.3d 912, 918 (8th Cir. 2015) (internal quotation marks omitted).  The question of whether these Defendants' conduct shocks the conscience is a factual determination that should be decided by a jury, not a motion to dismiss.

### B.    Plaintiff's *Monell* Claim Is Plausible and Adequately Pled.

This Court should also permit Plaintiff's *Monell* claim against Defendants Kirchmeier and Morton County to proceed to discovery in light of *Mitchell*.  28 F.4th at 899–901 (holding that *Monell* claim against Morton County brought by DAPL protester injured by less-lethal munitions fired by law enforcement officers was adequately pled).

"A plaintiff may establish municipal liability under Section 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute' a 'custom or usage' with the force of law."  *Id.* at 899 (quoting *Ware v. Jackson Cnty.*, 150 F.3d 873, 880 (8th Cir. 1998)).  To establish this "custom or usage," a plaintiff must plausibly allege three things:  "[t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees . . . deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to

the officials of that misconduct[, and] an injury by acts pursuant to the governmental entity's custom." *Id.*

The plaintiff in *Mitchell* adequately pleaded a *Monell* claim by plausibly alleging:  (1) that law enforcement officers acting under Defendant Kirchmeier had "engaged in a persistent pattern of unconstitutional conduct" throughout October and November 2016 by unconstitutionally using less-lethal munitions against peaceful protesters, *id.* at 900–01; (2) that Defendant Kirchmeier was "a policymaking official in Morton County for purposes of 'law enforcement practices,'"[6] *id.* at 901; and (3) that Defendant Kirchmeier tacitly authorized the persistent pattern of excessive force by defending that conduct and calling it "lawful tools," *id.*  The Eighth Circuit concluded that Defendant Kirchmeier "had been supervising law enforcement's response to the [DAPL] protests since they began, [so] he 'must have been aware' that they were peaceful."  *Id.*

Plaintiff has alleged literally *the exact same* prior pattern of conduct by law enforcement officers and *the exact same* knowing tacit authorization by Defendant Kirchmeier.  Compl. ¶¶ 209–225.  Thus, the Court should allow Plaintiff's *Monell* claim to proceed to discovery.

## VI.   PLAINTIFF'S STATE-LAW CLAIMS AGAINST NON-STATE DEFENDANTS ARE ADEQUATELY PLEADED.

Plaintiff stipulates to the dismissal of her state-law claims (Counts IV-VII) against Defendant Dvorak.  Plaintiff further stipulates to the dismissal of her claims for negligence and violations of North Dakota Century Code Sections 9-10-01 and 9-10-06 (Count VII) against all Defendants.  The rest of Plaintiff's state-law claims are plausibly pled and should proceed to

---

[6] Defendants have in the past contested that Defendant Kirchmeier was the incident commander in charge of the law enforcement response to the DAPL protests, but they now concede this fact. Municipal Mot. at 18 ("Pursuant to a Uniform Incident Command Request for Support signed by then Governor Jack Dalrymple and Morton County Sheriff Kyle Kirchmeier dated October 7, 2016, Sheriff Kirchmeier was designated as the overall incident commander.")

discovery.  Defendants raise several arguments to try to convince the court to dismiss Plaintiff's state law claims, none of which are availing.

First, Defendants argue that if the Court dismisses Plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over her state-law claims.  But supplemental jurisdiction is not applicable here even if the Court dismisses Plaintiff's federal claims because Plaintiff pled diversity jurisdiction as a standalone basis for federal subject-matter jurisdiction over her state-law claims.  Compl. ¶ 14.

Second, Defendants argue that Plaintiff's state law claims against Defendant Moll are barred by the statute of limitations because the Amended Complaint naming Defendant Moll (in place of the John Doe placeholder) does not relate back to the date of the original Complaint under Rule 15(c)(1)(C).  Municipal Mot. at 33–36.  Defendants accurately cite *Heglund v. Aitkin County*, 871 F.3d 572, 578 (8th Cir. 2017) in support of their position.  But *Heglund* simply cannot be reconciled with *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), and the Supreme Court's holding must control.  Focusing solely on what the plaintiff knew, the *Heglund* Court concluded that substituting out a John Doe for the appropriate defendant cannot relate back because use of a John Doe placeholder is not a mistake.  *Heglund*, 871 F.3d at 579.  This *directly contradicts* the Supreme Court's admonishment in *Krupski* that "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading."  560 U.S. at 541.  Because *Krupski* controls, this Court should focus not on what Plaintiff knew when originally using a John Doe placeholder, but on what Defendant Moll knew.  Defendant Moll surely knew from the outset that he was the one who injured Sophia with an explosive munition and that he would be added to this suit.  He even conceded in deposition to hitting Sophia with a munition at the exact moment she was injured.

Because Defendant Moll "knew or should have known that th[is] action would have been brought against [him]," Plaintiff's Amended Complaint should relate back to her original one, and her claims should not be time barred. Third, Defendants argue they are immune from state-law torts under the North Dakota Disaster Act of 1985. Municipal Mot. at 36–39. Even assuming that Defendants are covered by this Act, it does not protect "willful misconduct, gross negligence, or bad faith." N.D.C.C. § 37-17.1-16. Plaintiff alleges that Defendants purposefully attacked an unarmed nonviolent non-resisting young girl with explosives, injured her, and then cheered and laughed. That is willful misconduct, and it is certainly grossly negligent.

Fourth, Defendants argue that the public duty doctrine, N.D.C.C. § 32-12.1-03(3), provides unqualified blanket immunity for all law enforcement officers in North Dakota no matter how negligent, reckless, and even intentionally illegal their conduct is. Municipal Mot. at 39–41. As a matter of common sense, that cannot possibly be correct—the statute cannot be intended to shield law enforcement officers from all liability no matter how wantonly, sadistically, and outrageously they act. Defendants do not cite a single case in which any Court has interpreted the statute that broadly. To the contrary, North Dakota courts have allowed plaintiffs to bring tort claims, such as assault and battery, against law enforcement officers, which would not be possible under Defendants' interpretation of the public duty doctrine. *See, e.g., Ellis v. Devig*, No. CIV 3:08-CV-19, 2009 WL 1886644, at *9 (D.N.D. June 26, 2009) (allowing plaintiff to bring assault and battery claims against law enforcement officers).

Fifth, Defendants argue Defendant Moll is immune from liability under N.D.C.C. § 12.1-05-07.2, because his use of force against Sophia was "justified" in the sense that it was "authorized by law." Municipal Mot. at 41–42. But Defendant Moll engaged in clearly established objectively unreasonable excessive force, which is not just unauthorized and unjustified, but flagrantly illegal.

As a result, N.D.C.C. § 12.1-05-07.2 does not apply to Defendant Moll's conduct or shield him from liability.

Sixth, Defendant's argue Defendant's Moll's conduct was not "extreme and outrageous" and therefore cannot support a claim for Intentional Infliction of Emotional Distress.  But Defendant Moll shot an unarmed non-resisting civilian with an explosive munition that permanently maimed her.  That is plausibly "extreme and outrageous," which means this is a fact question that must be decided by a jury, not a motion to dismiss.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny both of Defendants' motions to dismiss in full.

Dated:  September 29, 2023                    Respectfully submitted,

*/s/  Benjamin M. Stoll*
Benjamin M. Stoll
CARLTON FIELDS P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
(202) 965-8160
bstoll@carltonfields.com

Lauren C. Regan
CIVIL LIBERTIES DEFENSE CENTER
1430 Willamette Street #359
Eugene, Oregon 97401
(541) 687-9180
lregan@cldc.org

Edward C. Barnidge
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, DC 20024
(202) 434-5000
ebarnidge@wc.com

*Attorneys for Plaintiff*