IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

CIVIL NO. 1:18-CV-00236-CSM

| | |
|---|---|
| SOPHIA WILANSKY,<br><br>    Plaintiff,<br><br>vs.<br><br>MORTON COUNTY, NORTH DAKOTA; KYLE KIRCHMEIER in his official capacity; ADAM J. DVORAK, in his personal capacity; and JONATHAN R. MOLL, in his personal capacity,<br><br>    Defendants. | **REPLY MEMORANDUM OF LAW IN SUPPORT OF COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |

\*\*\*   \*\*\*   \*\*\*

### I.   INTRODUCTION

Defendants Morton County, Kyle Kirchmeier, in his official capacity, and Jonathan R. Moll, in his personal capacity, ("County Defendants") submit this brief in reply to *Plaintiff's Consolidated Opposition to Defendants' Motions to Dismiss the Second Amended Complaint* (doc. 277), and in support of County Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (doc. 271) ("County's Principal Brief"). In addition to the arguments in County's Principal Brief and below, County Defendants incorporate and adopt the arguments of State Defendant Adam J. Dvorak presented in support of his separate Rule 12 motion and reply brief.

### II.   RESPONSE TO WILANSKY'S PURPORTED FACTUAL ALLEGATIONS

Wilansky misstates, mischaracterizes and expands upon her actual allegations contained in her *Second Amended Complaint*, particularly with respect to the specific alleged conduct of Defendants Moll and Dvorak, as discussed in the argument below where applicable.

### III.   ARGUMENT

1

### A.     <u>Wilansky Has Not Alleged She Was "Seized"</u>

Wilansky misinterprets and misapplies controlling law concerning what conduct constitutes a "seizure" under the Fourth Amendment. The Supreme Court of the United States has determined a Fourth Amendment seizure may occur in two separate situations, each of which has a separate common law pedigree and for which different principals are applied. As reiterated by the Supreme Court in *Torres v. Madrid*, 141 S.Ct. 989, 995 (2021), "[a]n arrest requires *either* physical force . . . or, **where that is absent**, submission to the assertion of authority." (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (italics in original, bold added). In other words, where physical force has been applied to the body, the common law standards applicable to use of force apply, not the standards applicable to a show of authority (whether pursuant to a show of authority complied with or termination of freedom of movement through intentional acquisition of physical control). This is demonstrated by the United States Court of Appeals for the Eighth Circuit's analysis of alleged Fourth Amendment seizures in recent cases discussed in County's Principal Brief at pages 22-29, namely *Martinez v. Sasse*, 37 F.4th 506 (8th Cir. 2022) and *Quraishi v. St. Charles County, Mo.*, 986 F.3d 831 (8th Cir. 2021), as well as in the United States District Court for the District of Columbia decision in *Black Lives Matter D.C. v. Trump*, 544 F.Supp.3d 15, 48-49 (D.C. 2021) ("BLM"). In each of those cases, officers applied either direct (pushing lawyer to the ground in *Martinez*) or indirect physical force (deploying teargas in *Quraishi* and flashbang grenades, rubber bullets and tear gas in *BLM*) to the bodies of individuals. In each of those cases, the courts applied the use of force test in ascertaining whether a "seizure" had occurred, and not the show of authority test (whether through show of authority complied with or through the termination of freedom of movement through intentional acquisition of physical control test), despite the fact that in all three of those cases the plaintiffs' freedom of

movement was impacted (i.e. repelled or dispersed).  *See, also Meggs v. City of Berkeley*, 2005 WL 483445, at * (N.D. Cal. Mar. 2, 2005) (an officer's use of police baton to push back protester from police line, and chop strike to protester's arm while directing protester to stay back was intended to repel rather than restrain, and therefore did not constitute a seizure under Fourth Amendment).  Once an officer applies force to the body, the use of force test only applies.  *Torres* essentially confirmed this is the proper analysis by holding whether an individual against which force is applied complies (i.e. submits) is irrelevant under the use of force test, and noted that an example of a seizure through termination of freedom of movement is *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) where police seized a driver when he crashed into their roadblock (i.e. the termination of movement did not involve the use of officer force).  Instead, under a use of force test, the inquiry is whether the use of force objectively manifested an intent to restrain.  *Torres*, at 998.  "Only an objective test **allows the police to determine in advance** whether the conduct contemplated will implicate the Fourth Amendment."  *Id* (bold added).  "Nor does the seizure depend on the subjective perceptions of the seized person."  *Id*. at 999.  In other words, Wilansky's perceptions in relation to the force allegedly applied by officers is irrelevant to the seizure inquiry (i.e. Wilansky's perception she was trapped behind the metal shield by force being applied), and instead the proper inquiry is how officers confronted with the situation would have objectively perceived their use of force as being intended to restrain instead of intended to repel or disperse.  How else could officers determine in advance whether the conduct contemplated would implicate the Fourth Amendment?

In addition, Wilansky's factual allegations as to what Moll and Dvorak did establish neither Moll nor Dvorak seized Wilansky under the Fourth Amendment under either the use of force or seizure by control tests.  It must be kept in mind that an individual may only be held

liable for a constitutional violation for that individual's own conduct, and not for the conduct of others. Because "liability for damages for a federal constitutional tort is personal, each defendant's conduct must be independently assessed." *Smith v. City of Minneapolis*, 754 F.3d 541, 547-48 (8th Cir. 2014). "Section 1983 does not sanction tort by association [so] an officer may be held liable only for his or her own use of excessive force." *Id*. The claims against Moll and Dvorak must be analyzed separately from each other, and separately from the alleged conduct of other officers on the scene.

### 1.  Wilansky Has Failed To Allege A Seizure by Moll

The only conduct Wilansky specifically alleges Moll engaged in is as follows:

> 138.  While Sophia and Stephen were pinned behind the metal sheet, Defendant Moll and law enforcement officers Skar, Hinrich, Rode, and Arndt moved west to get a better line of sight. Defendant Moll climbed into the turret of a Humvee with his 12-gauge shotgun, so he could get a better aim at Sophia and Stephen.
> 139.  Eventually, the law enforcement officers hit Sophia with at least one less-lethal munition. Upon information and belief, Defendant [sic] Arndt hit Sophia with a less-lethal munition. Defendant [sic] Hanson may have hit Sophia with a less-lethal munition as well.
> \*\*\*
> 148.  But just as Sophia stopped and began to bend down toward the plywood, Defendant Moll intentionally hit her with an explosive munition.
> 149.  Upon information and belief, the explosive munition was an Aerial Warning/Signaling Munition.

(Doc. 259 at ¶¶ 138-39, 148-49.)

Notably, Wilansky does not allege Moll fired at her while she was behind the barricade or metal sheet, she only alleges he positioned himself to get a better aim. Wilansky only specifically identifies non-parties Arndt and Hanson as officers who fired at her, and either hit or may have hit her with a less-lethal round (impact round). Wilansky does not allege Moll issued any commands to Wilansky. Wilansky only alleges she was hit by an alleged Aerial Warning/Signaling Munition fired by Moll after she stopped proceeding south across the bridge

(i.e. stopped complying with the command by other officers to move away from the barricade) and began to bend down toward a piece of plywood she intended to use as a shield (doc. 259 at ¶¶ 146-47) (i.e. again admits intention to stop complying with command by other officers to move away from the barricade).

As to Moll's alleged application of indirect force to the body of Wilansky, the applicable test is whether such application of force objectively manifested an intent to restrain Wilansky, or whether it objectively manifested some other intent, such as to repel or disperse.  Wilansky's admissions that:  other officers commanded her to move away from the barricade; other officers deployed less-lethal force toward her and ultimately struck her while she was behind the barricade and metal shield; she did not begin to move away from the barricade as commanded by others until she was struck by another officer(s); and she was not allegedly struck by the aerial warning/signaling munition allegedly deployed by Moll until after she stopped complying with the earlier commands and began to bend down to pickup a plywood shield, establish the alleged application of indirect force by Moll objectively manifested an intention to repel Wilansky rather than restrain her.  Wilansky admits all officers at all times remained north of the barricade.  She does not allege any officer told her to remain where she was or that she was under arrest.  Although Wilansky alleges she was severely injured as a result of an explosion, the focus of the seizure inquiry is not on the extent of the resulting injury, but rather on whether a reasonable officer under the circumstances would have understood in advance that the planned use of force would objectively manifest an intent to restrain or to repel/disperse.  Wilansky's Fourth Amendment excessive force claim against Moll fails on this basis alone.

    **2.**    **Wilansky Has Failed to Allege A Seizure By Dvorak**

The only conduct Wilansky alleges Dvorak engaged in is as follows:

    133.    Instead of responding to Stephen's explanation, numerous law enforcement officers began rapidly firing less-lethal munitions at Sophia and Stephen.
    134.    To avoid getting hit, Sophia and Stephen cowered behind the metal sheet.
    135.    While Sophia and Stephen were pinned behind the sheet unable to move or leave, Defendant Dvorak lobbed two Stinger Ball [sic] toward them.
    136.    In a blatant violation of his less-lethal training and appropriate police tactics, Defendant Dvorak did not inspect the likely detonation area to ensure no one would be hit by the grenades. Instead, he actively aimed the grenades toward Sophia.
    137.    The Stinger Ball Grenades landed and exploded within a few feet of Sophia.

(Doc. 259 at ¶¶ 133-37.)

    Wilansky asserts she perceived she was pinned behind the metal sheet before Dvorak deployed either stinger ball grenade, and does not allege she was actually struck by either stinger ball grenade. Wilansky does not allege Dvorak issued any verbal commands to her, but rather alleges other officers had commanded her to move away from the barricade prior to Dvorak's alleged use of indirect force.

    First, to the extent the deployment of the stinger ball grenades which are not alleged to have actually impacted Wilansky could be construed as a use of force, Wilansky's allegations establish a reasonable officer would have perceived the planned deployment of the stinger ball grenades under the alleged circumstances as manifesting an intent to repel rather than to restrain Wilansky and Joachinson (Stephen) from behind the barricade. Wilansky admits that prior to the deployment of the stinger ball grenades, other officers commanded Wilansky to move away from the barricade and other officers were deploying impact rounds, yet Wilansky remained concealed behind the metal shield. As discussed in County's Principal Brief, Wilansky's pleadings admit a large violent confrontation between protesters and law enforcement officers had occurred at this very location only hours prior, with protesters removing a burned-out truck forming a part of the barricade (log-chained to it), and attempting to pull away the other burned-out truck in the face of force applied by officers (i.e. protester attempts to dismantle the defensive barricade). Dvorak

6

did not seize Wilansky under the use of force test.

In addition, Dvorak did not seize Wilansky through a show of authority complied with or through the termination of freedom of movement through intentional acquisition of physical control.  Wilansky's pleadings establish she did not comply with any alleged show of authority by Dvorak.  Wilansky admits she remained behind the barricade and metal shield following the deployment of the stinger ball grenades, and did not move south away from the barricade until she was actually hit by an impact round deployed by a non-party.  In addition, Wilansky's alleged perception she was pinned behind the metal shield (Wilansky's perception is irrelevant to the seizure analysis) was allegedly due to non-party officers' deployment of impact rounds at her prior to Dvorak's deployment of the stinger ball grenades.  Wilansky does not allege Dvorak's deployment of the stinger ball grenades prevented her from leaving the barricade, and she alleges she actually did so once she was subsequently struck with an impact round by a non-party.  Further, being dispersed as a result of the application of force does not constitute a termination or restriction on freedom of movement.  *See Quraishi*, at 840 (an officer's dispersal of a crowd through the use of tear gas did not result in termination or restriction upon freedom of movement).  Wilansky has failed to allege a plausible Fourth Amendment claim against Dvorak under either a use of force or intentional acquisition of control.  Wilansky's Fourth Amendment excessive force claim against Dvorak fails on this basis alone.

      **B.**    **Moll and Dvorak Are Entitled To Qualified Immunity**

As explained in County's Principal Brief at pages 30-32, even assuming, arguendo, Wilansky has alleged a plausible claim of violation of her constitutional rights, such rights were not clearly established as of November 21, 2016, thereby entitling Moll and Dvorak to qualified immunity from suit.  *Quraishi* establishes that the law was not clearly established as of August of

2014 that the application of tear gas which objectively manifested an intent to disperse a crowd rather than to restrain constituted a seizure under the Fourth Amendment. *Martinez* establishes that the law was not clearly established as of June of 2018 that the application of direct physical force which objectively manifested an intent to repel rather than restrain constituted a seizure under the Fourth Amendment. The events at issue in this case occurred in November of 2016, between the events involved in *Quraishi* and *Martinez*. Both *Quraishi* and *Martinez* are binding Eighth Circuit appellate precedent. The *BLM* case (District of Columbia) further establishes that the law was not clearly established as of June of 2020 that the use of flashbang grenades, rubber bullets and tear gas which manifests an intent to disperse rather than restrain constituted a seizure under the Fourth Amendment. Similarly, Moll and Dvorak are entitled to qualified immunity and Wilansky's Fourth Amendment excessive force claim should be dismissed.

C. **Wilansky Inappropriately Argues Claims Previously Dismissed**

As discussed in County's Principal Brief at page 2, footnote 2, this Court previously dismissed Wilansky's Fourteenth Amendment excessive force and *Monell* claims with prejudice. The Court should deny Wilansky's attempt to revive those claims. Wilansky is asserting the same arguments previously rejected by this Court. As a practical matter, the Eight Circuit Court of Appeals has repeatedly stated that a Fourteenth Amendment substantive due process claim requires conduct which shocks the conscience which is unrelated to a legitimate employment responsibility. *See Troung v. Hassan*, 829 F.3d 627, 632 (8th Cir. 2016) (Fourteenth Amendment substantive due process claim against a bus driver failed, in part, because the bus driver's action of throwing the plaintiff passenger off a bus for failing to pay a fee were related to his legitimate responsibilities of driving the bus, and therefore not inspired by malice or sadism); *Helseth v. Burch*, 258 F.3d 867, 870 (8th Cir. 2001) (holding "only a purpose to cause harm unrelated to the legitimate object

8

of arrest will satisfy the element of arbitrary conduct shocking the conscience, necessary for a due process violation."). It cannot reasonably be disputed that Moll's and Dvorak's alleged conduct at issue related to their employment responsibilities as law enforcement officers. Wilansky's Fourteenth Amendment claim, as well as *Monell* claim, were properly dismissed.

D.  **Wilansky's State Law Claims**

Wilansky concedes all of her state law claims against Dvorak, and her claims of negligence and violations of North Dakota Century Code Sections 9-10-01 and 9-10-06 against all Defendants should be dismissed. (Doc. 277 at p. 31.) Wilansky defends her remaining state law claims.

1.  **Wilansky's State Law Claims Against Moll Are Time Barred.**

While conceding County Defendants accurately cite *Heglund v. Aitkin County*, 871 F.3d 572, 578 (8th Cir. 2017) to support their position that Wilansky's state law claims are time-barred, Wilansky argues *Heglund* cannot be reconciled with *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), and therefore the Supreme Court's holding must allegedly control. (Doc. 277 at p. 32.) Specifically, Wilansky argues *Heglund* directly contradicts the admonishment in *Krupski* that "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Id*. Wilansky misinterprets *Krupski*, which is clearly factually distinguishable from *Heglund* and this case. As explained by the United States Court of Appeals for the Sixth Circuit in *Smith v. City of Akron*, 476 Fed. Appx. 67, 69-70 (6th Cir. 2012) in addressing an argument essentially identical to Wilansky's, the Supreme Court in *Krupski* addressed a situation where the plaintiff knew of two potential parties when she filed the lawsuit, but she sued the wrong party and corrected the mistake only after the statute of limitations had expired. *Id*. at 2490-92. By comparison, Wilansky, like the plaintiffs in *Smith* and *Heglund*, did not make a mistake by suing the wrong defendant, she

9

instead utilized a "John Doe" placeholder which the courts in *Smith* and *Heglund* determined did not constitute a "mistake" under Rule 15(c) and did not extend the deadline for adding the proper parties before expiration of the statute of limitation.  The *Smith* court noted such approach was consistent with the holding of every other circuit which has addressed this issue, including the Eighth Circuit.  *Smith v. City of Akron*, at 70 (citing *Wilson v. U.S. Gov't*, 23 F.3d 559, 563 (1st Cir. 1994); *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995); *Locklear v. Bergman & Beving AB*, 457 F.3d 363, 367 (4th Cir. 2006); *Jacobsen v. Osborne*, 133 F.3d 315, 320-21 (5th Cir. 1998); *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998); *Foulk v. Charrier*, 262 F.3d 687, 696 (8th Cir. 2001); *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004); *Wayne v. Jarvis*, 197 F.3d 1098, 1103-04 (11th Cir. 1999*))*. Wilansky's state law claims against County Defendants should be dismissed as time-barred.

Although not relevant, Wilansky's argument that Moll knew or should have known he would be sued is incorrect.  Moll denies he ever utilized any sort of explosive munition on the night in question.  The first time Wilansky ever alleged Moll deployed an aerial warning/signaling munition was in *Plaintiff's Opposition to County Defendants' Converted Motion for Summary Judgment* (doc. 124) filed July 2, 2021.  This occurred well after the November 21, 2019 expiration of the three year statute of limitations on Wilansky's state law claims against County Defendants.

### 2.     County Defendants' Other Defenses to State Law Claims

County Defendants rely upon their arguments in County's Principal Brief in relation to Wilansky's remaining state law claims.

## IV.     CONCLUSION

For the reasons discussed above, the Court should dismiss Wilansky's claims against all Defendants, in their entirety and with prejudice.

Dated this 20th day of October, 2023.

                BAKKE GRINOLDS WIEDERHOLT

                By:   /s/Shawn A. Grinolds
                      Randall J. Bakke (#03898)
                      Shawn A. Grinolds (#05407)
                      Special Assistant State's Attorneys for Morton County
                      300 West Century Avenue
                      P.O. Box 4247
                      Bismarck, ND 58502-4247
                      (701) 751-8188
                      rbakke@bgwattorneys.com
                      sgrinolds@bgwattorneys.com

                      Attorneys for Defendants Morton County, Kyle Kirchmeier, and Jonathan R. Moll

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2023, a true and correct copy of the foregoing **REPLY MEMORANDUM OF LAW IN SUPPORT OF COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** was filed electronically with the Clerk of Court through ECF.

ATTORNEYS FOR PLAINTIFF:

Benjamin M. Stoll
Carlton Fields
1025 Thomas Jefferson Street NW
Suite 400 West
Washington, DC 20007-5208
(202) 965-8160
bstoll@carltonfields.com

Edward C. Barnidge
Williams & Connolly LLP
725 Twelfth Street NW
Washington, DC 20005
ebarnidge@wc.com

Lauren C. Regan
Civil Liberties Defense Center
1430 Willamette St. #359
Eugene, OR 97401

lregan@cldc.org

ATTORNEYS FOR DEFENDANTS DEREK J. ARNDT, PAUL D. BAKKE, ADAM J. DVORAK, TRAVIS A. NELSON, JOSHUA W. RODE, EVAN M. SAVAGEAU, AND TRAVIS M. SKAR:

Courtney R. Titus
Assistant Attorney General
Office of Attorney General
500 North 9th Street
Bismarck, ND 58501-4509
(701) 328-3640
ctitus@nd.gov

Jane G. Sportiello
Assistant Attorney General
Office of Attorney General
500 North 9th Street
Bismarck, ND 58501-4509
(701) 328-3640
jsportiello@nd.gov

By: */s/ Shawn A. Grinolds*
SHAWN A. GRINOLDS